In re Kenneth Walter LAKE and Lanore Yvonne Lake, dba Lake & De Angelis, dba Hacienda Resort & Residence Club, dba Frontier Capitola Corp., Debtors.

Kenneth Walter LAKE and Lanore Yvonne Lake, Appellants/Cross–Appellees,

v.

Randall CAPPS and Linda Capps and Norman Davis, Appellees/Cross–Appellants.

BAP Nos. NC–96–1049–RHB, NC–96–1103–RHB.
Bankruptcy No. 95–10687.
Adv. No. 95–1155.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 26, 1996.

Decided Nov. 4, 1996.

Michael W. Ahern and Michael C. Fallon, Santa Rosa, CA, for Appellants/Cross–Appellees.

David N. Chandler, Santa Rosa, CA, for Appellees/Cross–Appellants.

Before: RUSSELL, HAGAN and BUFFORD [1], Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

Several judgment creditors filed a complaint to determine that their state court default judgment for fraud and another alleged debt were nondischargeable pursuant to §§ 523(a)(2)(A), (B) and (a)(6) [2]. The bankruptcy court gave collateral estoppel effect to the state court judgment and held that the compensatory damages portion of the judgment was nondischargeable, but that the state court record did not support a finding that the punitive damages and attorneys' fees were nondischargeable. After a trial, the bankruptcy court concluded that the plaintiffs' other alleged debt was also dischargeable.

On appeal, the debtors argue that the bankruptcy court erred in giving collateral estoppel effect to the default judgment on the grounds that, *inter alia*, the judgment was obtained through extrinsic fraud. Accordingly, they request that the judgment be vacated.

---

**1.** The Honorable Samuel L. Bufford, Bankruptcy Judge for the Central District of California, sitting by designation.

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

The plaintiffs cross-appeal the bankruptcy court's determination that the punitive damages portion of their judgment is dischargeable. They also contend that the bankruptcy court abused its discretion in overruling their evidentiary objection to the testimony of one of the debtors.

We VACATE the bankruptcy court's judgment in favor of the plaintiffs on the default judgment and REMAND to the bankruptcy court with instructions. On the cross-appeal, we AFFIRM.

## I. FACTS

Kenneth Lake was a licensed contractor and involved in numerous real estate projects. In particular, he and his wife, Lanore Lake, owned a majority interest in Bay Valley Equity, Inc. ("Bay Valley"). Bay Valley was incorporated on September 20, 1990 and held title to a parcel of real property in Marin County which was allegedly slated as the future site of a casino resort and an adjoining golf course.

On July 23, 1991, Randall and Linda Capps (collectively "Capps") and Norman Davis ("Davis") each invested $62,500 with Bay Valley to obtain a percentage interest in the alleged future golf course ("golf course project"). On March 24 1992, the Capps allegedly invested another $50,000 for the same project. Finally, on May 22, 1992, the Capps made a third investment in the amount of $74,031.35. According to the Capps and Davis, it was their understanding that the plans for the golf course were final, the financing was secure and a water supply had been identified and approved. Davis and the Capps also claim that before deciding to invest any money with Bay Valley, they allegedly evaluated and relied on a personal financial statement that was prepared by the Lakes.

In addition to the golf course project, the Capps and Davis became involved in another transaction with the Lakes concerning the purchase of real property in Madera County ("Madera property"). The Capps loaned the Lakes $150,000 and Davis loaned them $50,000. This money was allegedly used as a down payment for the purchase of the Madera property. The Capps and Davis claim that as security for these loans they were promised a second priority trust deed and were told that the loan proceeds would be used exclusively for the down payment.

Prior to the plaintiffs' investment in the golf course project and their involvement in the purchase of the Madera property, the Lakes had no prior business dealings with either party and were unaware of where the Capps and Davis had obtained the money to invest in these projects.

Neither of the plaintiffs' investments turned out favorably. By December 5, 1992, Bay Valley had little or no value and the Lakes transferred for no consideration their interest to a third party. The golf course project had been abandoned and the Capps and Davis learned that just $90,000 of their $200,000 loan was used as a down payment on the real property. In addition, they obtained only a fifth position deed of trust instead of the second position that they were allegedly promised.

Mr. Capps contacted the Lakes to request repayment of his money. The Lakes contend that when Mr. Capps was told that he would not be repaid, he threatened to kill them.

In January 1993, the Lakes moved to Las Vegas, Nevada. The Lakes claim that the move was prompted by their fear that Mr. Capps would carry out his threats to harm or kill them. After the Lakes moved out of state, the Capps and Davis ("plaintiffs") filed two complaints against the Lakes; an action to quiet title to the Madera property in the Superior Court of California, County of Madera ("Madera lawsuit") and an action in connection with the alleged future golf course project in the Superior Court of California, County of Marin ("Marin lawsuit").

As a result of the Lakes moving to Nevada, the plaintiffs were unsuccessful in serving the Lakes with the summons and complaint at their former California address. The plaintiffs subsequently obtained an order authorizing service by publication pursuant to CAL.CODE CIV.P. § 415.50.

On September 23, 1993, the plaintiffs obtained a default judgment against the Lakes in the Madera law suit. The judgment

awarded $200,000 in compensatory damages, $200,000 in punitive damages and $32,539.87 in attorneys' fees. A final judgment was entered on October 24, 1994. The status of the Marin lawsuit was unclear from the record on appeal.

Sometime in the early summer of 1994, the Lakes informally heard that a lawsuit had been filed against them in Madera. Mr. Lake contacted the clerk of the Madera County Superior Court and obtained a copy of the default judgment later that summer.

The Lakes filed for chapter 7 relief on March 23, 1995. On June 16, 1995, the Capps and Davis filed a complaint to determine that the debts arising from their default judgment and their other alleged loans to the Lakes (or Bay Valley) were nondischargeable.[3]

The bankruptcy court entered judgment in favor of the plaintiffs for the compensatory damages[4] portion of their state court judgment regarding the Madera property, but determined that based upon the state court's findings, the punitive damages and attorneys' fees awards were dischargeable. The bankruptcy court conducted a trial on the remaining claim concerning their investment in the alleged golf course project. In its memorandum decision, the bankruptcy court determined that the plaintiffs failed to establish a claim under § 523(a)(2)(A) or § 523(a)(6) concerning their investments in the alleged golf course and that this debt was also dischargeable.

The debtors appeal the bankruptcy court's order granting partial judgment in favor of the plaintiffs for the compensatory damages. The plaintiffs cross-appeal the determination that their judgment for punitive damages was dischargeable and also appeal the bankruptcy court's ruling against their evidentiary objection to portions of Mr. Lake's testimony.[5]

## II. ISSUES

A. Whether the debtors are precluded from raising extrinsic fraud as a defense to the collateral estoppel effect of the plaintiffs' state court default judgment.

B. Whether the bankruptcy court erred in holding that the plaintiffs did not have a claim under § 523(a)(6) for the punitive damages component of their state court default judgment.

C. Whether the bankruptcy court abused its discretion in overruling the plaintiffs' objection to the debtor's testimony concerning how the plaintiffs' obtained the funds that they invested with the debtors.

## III. STANDARD OF REVIEW

■■■ The availability of collateral estoppel is a question of law reviewed *de novo*. *In re Nourbakhsh,* 67 F.3d 798, 800 (9th Cir. 1995) (citing *In re Lockard,* 884 F.2d 1171, 1174 (9th Cir.1989)). To the extent we must determine whether we have jurisdiction to grant the relief requested, jurisdiction is also reviewed *de novo*. *In re United Management, Inc.,* 14 F.3d 1380, 1383 (9th Cir.1994).

Plaintiffs RANDALL CAPPS, LINDA CAPPS, and NORMAN DAVIS counter-appeal from the judgment of the bankruptcy court entered in this adversary proceeding on December 28, 1995.

It is unclear from the plaintiffs' notice of appeal and their opening brief whether the plaintiffs seek review of the bankruptcy court's ruling on the punitive damages only, or both the punitive damages and the attorneys' fees. At trial, the plaintiffs' attorney contended that the punitive damages were nondischargeable under § 523(a)(6), but did not challenge the dischargeability of the attorneys' fees. Accordingly, we conclude that our review of the plaintiffs' cross-appeal on the dischargeability complaint is limited to whether the punitive damages are nondischargeable under § 523(a)(6).

---

**3.** The plaintiffs' complaint contained four counts. Count I requested that the bankruptcy court give collateral estoppel effect to the Madera County state court judgment and find that the debt was nondischargeable pursuant to § 523(a)(2)(A). It appears that Count III was pleaded as an alternative to Count I in the event that the bankruptcy court ruled that collateral estoppel did not apply. Count III relied on § 523(a)(2)(A), (B) and § 523(a)(6). At trial, the parties stated that Count II had been settled. The last claim for relief, Count IV, was based upon the plaintiffs' investment in the golf course project and sought relief pursuant to § 523(a)(2)(A) and § 523(a)(6).

**4.** The judgment also included $120 for costs.

**5.** In relevant part, the plaintiffs' "Notice of Counter–Appeal" states:

■ Whether the plaintiffs had a cause of action under § 523(a)(6) with respect to their judgment for punitive damages is a question of law which we review *de novo*. *In re Apte*, 180 B.R. 223, 227 (9th Cir. BAP 1995), *aff'd*, 96 F.3d 1319 (9th Cir.1996).

■ A bankruptcy court's evidentiary rulings are reviewed for an abuse of discretion and should not be reversed absent a showing of prejudice. *In re Sternberg*, 85 F.3d 1400, 1408 (9th Cir.1996) (citing *City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 936 (9th Cir.1995)).

## IV. DISCUSSION

Central to this appeal is whether the bankruptcy court erred in failing to consider the debtors' request for an order vacating the plaintiffs' state court default judgment, which they allege was procured through extrinsic fraud. The debtors argue that the bankruptcy court abused its discretion in concluding that their extrinsic fraud argument was irrelevant to the bankruptcy court's determination of whether to give collateral estoppel effect to the plaintiffs' state court judgment. On this basis, they request that we reverse the bankruptcy court's order and remand to the bankruptcy court for a trial on the merits of whether the debt arising from the debtors' alleged fraud is dischargeable.

The plaintiffs assert that neither the bankruptcy court nor this Panel has the authority to vacate their state court judgment. They also assert that even if this relief were available, the debtors have not followed the proper procedure for collaterally attacking a state court judgment. Accordingly, they urge the Panel to affirm the bankruptcy court's holding that the debt is nondischargeable.

In addition, the plaintiffs cross-appeal that part of the bankruptcy court's order entering judgment for the debtors on their § 523(a)(6) claim and seek an order remanding this matter to the bankruptcy court.

Finally, the cross-appeal requests that the Panel reverse the bankruptcy court's order overruling their evidentiary objection to Mr. Lake's testimony concerning Mr. Capps' allegedly illegal activities in connection with the funds that he invested in the debtors' real property development projects.

### A. Attacking a State Court Judgment in Bankruptcy Court

#### 1. The plaintiffs' jurisdiction argument

■ Any substantive or procedural arguments raised by the plaintiffs with respect to the debtors' collateral attack on the validity of the state court judgment are ones that should be raised in the bankruptcy court. However, we briefly address the plaintiffs' objection to the bankruptcy court's jurisdiction over the debtors' collateral attack on the state court judgment. According to the plaintiffs, a bankruptcy court lacks jurisdiction to vacate a state court judgment in the context of a nondischargeability proceeding. In support of this contention, the plaintiffs rely on *In re Daghighfekr*, 161 B.R. 685 (9th Cir. BAP 1993).

In *Daghighfekr*, we affirmed the bankruptcy court's determination that a state court default judgment entered against the debtor in a civil suit for assault was entitled to preclusive effect as to the amount of damages and the nature of the acts causing the injury. *Id.* at 686–87. The debtor contended that the bankruptcy court erred in failing to hear evidence independent of the state court's findings on damages. We explained that "[u]nder § 523, the bankruptcy court has jurisdiction only to discharge the debtor from the debt. While other sections of the Bankruptcy Code grant the court jurisdiction to allow and disallow claims, . . . . this statutory mechanism may not be invoked under § 523 to amend, alter, or reverse valid state court judgments." *Id.* at 687.

The plaintiffs have taken the above statements out of context and misstate the holding in *Daghighfekr* as meaning that a bankruptcy court cannot entertain an attack on a state court judgment in a nondischargeability proceeding. In *Daghighfekr*, the debtor did not dispute the validity of the state court default judgment against him. Rather, he contended that the bankruptcy court erred in giving *res judicata* effect to the amount of damages that were awarded. *Id.* at 686. Thus, our discussion of a bankruptcy court's

jurisdiction under § 523 was in the context of whether § 523 allowed bankruptcy courts to adjust the amount of *an otherwise valid judgment.* We emphasized that when a creditor obtains *a valid state court judgment,* as the creditor in *Daghighfekr* had obtained, § 523 does not allow the bankruptcy court to alter the amount or validity of that judgment.

In *Daghighfekr* we did not determine whether the bankruptcy court has jurisdiction to vacate a state court default judgment procured through extrinsic fraud. That case dealt with a valid state court judgment. Here, the issue of jurisdiction turns on whether a court is required to give collateral estoppel effect to a judgment when the judgment is allegedly void due to fraud. Accordingly, the plaintiffs' reliance on *Daghighfekr* is misplaced and this argument is without merit.

### 2. *Whether collateral estoppel applies*

■ The rules of federal and state comity establish that federal courts are required to give prior state court judgments the same preclusive effect as the state court that rendered the judgment. 28 U.S.C. § 1738. In determining the preclusive effect of a prior state court judgment, a federal court must, as a matter of full faith and credit, apply the collateral estoppel law of the state that rendered the judgment. *Nourbakhsh,* 67 F.3d at 801 (citing *Lockard,* 884 F.2d at 1174).

In the instant case, the plaintiffs sought to have a California default judgment for fraud recognized in a nondischargeability proceeding before the bankruptcy court. *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) (holding that collateral estoppel principles apply in nondischargeability proceedings). Under California law, the applicable collateral estoppel requirements are:

1. The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;

2. The issue was actually litigated in the former proceeding;

3. The issue was necessarily decided in the former proceeding;

4. The judgment in the former proceeding was final and on the merits; and

5. The party against whom preclusion is sought must be the same, or in privity with, the party to the former proceeding.

*In re Kelly,* 182 B.R. 255, 258 (9th Cir. BAP 1995) (citing *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir.1992)).

■ The bankruptcy court reluctantly determined that the plaintiffs' judgment satisfied the above requirements [6] and that, as a matter of law, it must give collateral estoppel effect to the prior state court judgment in the nondischargeability proceeding. *Grogan,* 498 U.S. at 284–85 n. 11, 111 S.Ct. at 658 n. 11; *Nourbakhsh,* 67 F.3d at 801. In its memorandum of decision, the bankruptcy court opined that although it was compelled by higher authority to give collateral estoppel effect to the judgment, it considered it a gross injustice to give a default judgment collateral estoppel effect in dischargeability litigation, particularly when the debtor did not know about the lawsuit on the underlying judgment.

■ Notwithstanding the bankruptcy court's ruling that the requirements of collateral estoppel were satisfied, the debtors contend that the bankruptcy court erred in failing to consider their request to vacate [7] the

---

**6.** Although the plaintiffs in the instant case obtained their state court judgment against the debtors by default, under California law, a default judgment satisfies the "actually litigated" requirement. *In re Green,* 198 B.R. 564, 566 (9th Cir. BAP1996) (citing *Four Star Elec., Inc. v. F & H Constr.,* 7 Cal.App.4th 1375, 1380, 10 Cal. Rptr.2d 1, 5 (1992)); *see also In re Moore,* 186 B.R., 962, 971 (Bankr.N.D.Cal.1995) (and cases cited therein).

**7.** The debtors' opening brief frames their request for relief as a direct attack on the judgment through an independent action in equity. Were

this statement true, it appears that neither this Panel nor the bankruptcy court would have jurisdiction over the debtors' request for relief. *See In re Hunter,* 66 F.3d 1002, 1006 (9th Cir.1995) (holding that bankruptcy courts do not have jurisdiction over independent actions involving equitable relief absent a constitutional or statutory basis for exercising federal jurisdiction).

Here, the debtors attacked the state court judgment during a nondischargeability proceeding. *See generally In re Schwager,* 178 B.R. 106 (Bankr.S.D.Tex.1995) (considering the debtor's motion for summary judgment based on extrinsic

plaintiffs' state court judgment based upon an exception to general rules of comity and collateral estoppel. The debtors assert that the plaintiffs' judgment is subject to collateral attack in the bankruptcy court because the default judgment was obtained through extrinsic fraud.

### 3. The extrinsic fraud exception

 A state court judgment is subject to collateral attack if the state court lacked jurisdiction over the subject matter or the parties, or the judgment was procured through extrinsic fraud. *Gonzales v. Parks,* 830 F.2d 1033, 1036 (9th Cir.1987) (citing *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940)); *see also In re James,* 940 F.2d 46, 52 (3d Cir.1991). Equity will set aside a judgment on the basis of extrinsic fraud if the judgment resulted from circumstances of unfairness or injustice where the aggrieved party was not afforded an opportunity to participate in the proceedings or to present his case to the court. *Barber v. California Credit Council,* 224 Cal. App.2d 635, 636, 36 Cal.Rptr. 834, 835 (1964); *see also Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970, *reh'g denied,* 328 U.S. 879, 66 S.Ct. 1335, 90 L.Ed. 1647 (1946); *United States v. Throckmorton,* 98 U.S. 61, 65, 25 L.Ed. 93 (1878). The basic requirement for invoking the extrinsic fraud exception is that there has been no fair adversary trial at law, either because the aggrieved party was kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense. *Throckmorton,* 98 U.S. at 65, 25 L.Ed. 93.

 Extrinsic fraud is a broad concept which covers a number of situations. The presence of an extrinsic fraud claim necessarily depends upon the facts of the case. *Galper v. Galper,* 162 Cal.App.2d 391, 396–97, 328 P.2d 487 (1958); *see also* 8 E.B. WITKIN, California Procedure, §§ 204–10, 215A (3d ed. 1988 & Supp.1996) (reporting cases where a party was kept in ignorance of a lawsuit or was induced not to appear, a claim or defense was concealed from a party, and cases where the prevailing party obtained the judgment through coercion or duress).

 A state court judgment allegedly procured through extrinsic fraud is subject to collateral attack in a court of the state that rendered the judgment or in a federal court. *Heiser,* 327 U.S. at 736, 66 S.Ct. at 857–58; *United States v. Fallbrook Pub. Util. Dist.,* 347 F.2d 48, 59 n. 9 (9th Cir.1965) (federal courts have authority to grant relief from state court judgments). Thus, bankruptcy courts have jurisdiction over a collateral attack of a state court judgment when the attack is based upon extrinsic fraud. *Pepper v. Litton,* 308 U.S. 295, 305–06, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939); *In re Du-Frayne,* 194 B.R. 354, 367–68 (Bankr.E.D.Pa. 1996); *In the Matter of Montalvo,* 157 B.R. 510, 513 (D.P.R.1993). All determinations of fraud and the consequences of that fraud by the bankruptcy court must be decided under the law of the state that rendered the judgment. *Montalvo,* 157 B.R. at 514.

### 4. Applicable state law

 Under California law, a court of equity may at any time [8] set aside a judgment obtained through extrinsic fraud. *Lovato v. Santa Fe Int'l Corp.,* 151 Cal.App.3d 549, 554, 198 Cal.Rptr. 838, 840 (1984); *see also Throckmorton,* 98 U.S. at 65; *Kimes v. Stone,* 84 F.3d 1121, 1127 (9th Cir.1996) (and cases cited therein). When a judgment has

---

fraud in the context of a nondischargeability proceeding). A bankruptcy court clearly has jurisdiction over matters concerning the dischargeability of a debt pursuant to 28 U.S.C. § 157(b)(2)(I). This negates the possibility that this could be construed as an "independent action" despite the debtors' characterization of their requested relief.

8. Under California law, if the fraud is extrinsic, the time limitations contained in CAL.CODE CIV.P. § 473 do not apply. 8 E.B. WITKIN, CALIFORNIA PROCEDURE, § 148 (3d ed. 1985). In contrast, motions to vacate brought pursuant to CAL.CODE CIV.P. § 473 must be brought six months after the judgment, order or proceeding was taken. Under CAL.CODE CIV.P. § 473.5, the motion must be brought within two years after entry of default. Similarly, the Federal Rules of Civil Procedure counterpart, FED.R.CIV.P. 60(b), also has restrictive time requirements. Under subsections (1), (2) or (3) (extrinsic and intrinsic fraud), there is a one year statute of limitations.

been obtained through fraudulent means, the policy favoring a fair adversary proceeding on the merits outweighs the public policy that underlies finality of judgments. *See McHugh v. Howard,* 165 Cal.App.2d 169, 175, 331 P.2d 674 (1958) (noting that a judgment obtained through extrinsic fraud is not entitled to the protection of *res judicata* ).

■■■ To establish a case for vacating a California state court judgment based upon extrinsic fraud, the movant must plead and prove that he has a meritorious case. *New York Higher Educ. Assistance v. Siegel,* 91 Cal.App.3d 684, 689, 154 Cal.Rptr. 200, 203 (1979) (reiterating that no bare right to an adversary proceeding exists). In addition, if the party is seeking relief from a default judgment, as in the instant case, he must also present a satisfactory excuse for not defending against the original action. *Stiles v. Wallis,* 147 Cal.App.3d 1143, 1146, 195 Cal.Rptr. 377, 378 (1983). Finally, the moving party must prove diligence in setting aside the default once it was discovered. *Id.* For each of these requirements, the party seeking to set aside a judgment pursuant to a court's equity powers must make a substantially higher showing than is necessary to obtain relief under statute. *In re Marriage of Stevenot,* 154 Cal.App.3d 1051, 1074, 202 Cal.Rptr. 116, 132 (1984) (relying on a court's equity power rather than on CAL.CODE CIV.P. § 473 requires a stronger showing).

### 5. *Remand of the instant case is necessary*

At the conclusion of the nondischargeability trial, the debtors' attorney made an offer of proof that the debtors were prepared to prove that the default judgment was obtained through extrinsic fraud. Specifically, the debtors were prepared to testify that Mr. Capps made repeated threats to their lives and safety and that they moved to Las Vegas out of fear that he would act on these threats. The debtors were also prepared to show that after the debtors moved out of state, under the duress of these threats, Mr. Capps and the other plaintiffs filed a complaint in state court, obtained an order allowing notice by publication and subsequently took the debtors' default. The debtors would further testify that they did not receive actual notice of the lawsuit until after the judgment had been entered.

The bankruptcy court did not make specific findings of fact concerning the debtors' allegations of extrinsic fraud because the court held that it was required to give collateral estoppel effect to the plaintiffs' judgment. As a result, we do not have sufficient facts before us to determine whether the Lakes have a meritorious defense to the state court claim for fraud, whether the debtors acted diligently in attempting to vacate the judgment, or whether the debtors' defense for failing to defend against the original complaint is credible.

■■■ Because the debtors' allegations of extrinsic fraud have never been considered and been found unpersuasive by a court of competent jurisdiction, the debtors are entitled to remand for the bankruptcy court to determine the validity of the plaintiffs' state court judgment for fraud. *Montalvo,* 157 B.R. at 514. However, we note that on remand the bankruptcy court may require the defendants to plead the particulars of the alleged extrinsic fraud with greater specificity. *Concha v. London,* 62 F.3d 1493, 1503 (9th Cir.1995), *cert. dismissed,* — U.S. —, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996). Alternatively, the debtors may file a motion seeking relief from the judgment in the state court that entered the judgment. In the interest of time and judicial economy, however, the bankruptcy court appears to be a more appropriate forum in which to seek a hearing.

### B. *Whether the Plaintiffs' Judgment for Punitive Damages in the State Court Judgment for Fraud is Nondischargeable Under § 523(a)(6)*

Relying on *In re Levy,* 951 F.2d 196 (9th Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992), the bankruptcy court ruled that the plaintiffs' punitive damages award for fraud was not excepted from discharge under § 523(a)(2)(A), that § 523(a)(6) was not applicable to the instant case and, even if it were, the state court's findings did not support a determination that the debtors acted willfully and maliciously

under § 523(a)(6). On appeal, the plaintiffs allege that the bankruptcy court erred in concluding that § 523(a)(2)(A) and § 523(a)(6) are mutually exclusive claims based upon a state court judgment for fraud. The plaintiffs also argue that the bankruptcy court erred in considering only the state court record in determining whether the debtors' conduct met the requirements of § 523(a)(6).

■ Our decision to vacate the bankruptcy court's order precludes the need for us to consider the plaintiffs' cross-appeal on the issue of punitive damages. The punitive damages award was part of the state court judgment. Based upon our decision herein, that judgment is no longer entitled to preclusive effect. Accordingly, this part of the bankruptcy court's decision is also vacated and remanded for further proceedings consistent with this decision.

### C. *Mr. Lake's Testimony Concerning the Capps' Investments in Bay Valley*

■ On cross-examination, Mr. Lake testified that Mr. Capps told him that the money he had invested and/or loaned to Bay Valley was obtained through illegal means. Specifically, Mr. Lake testified that the Mr. Capps admitted to using these investment opportunities as a means of laundering "drug money." The Capps' attorney objected to this statement as irrelevant and hearsay. The bankruptcy court concluded that the testimony was admissible as a statement by a party opponent and overruled the hearsay objection. FED.R.EVID. 801(d)(2)(A)[9].

As to the Capps' objection that the testimony was not relevant, the bankruptcy court ruled that it was relevant to the determination of whether plaintiffs reasonably relied on the Lakes' financial statement. On appeal, the plaintiffs contend that the bankruptcy

court abused its discretion in considering this testimony because it was irrelevant and it unduly prejudiced their case.

■ Despite the plaintiffs' contention that Mr. Lake's testimony was self-serving and not competent, the statement was offered against Mr. Capps and was his own statement. Accordingly, the bankruptcy court did not err in concluding that it was not hearsay and was admissible as a statement by a party opponent. FED.R.EVID. 801(d)(2)(A). Further, we conclude that this testimony was relevant to whether the plaintiffs reasonably relied on the Lakes' allegedly false financial statement. The source of the money invested by the Capps' could have been relevant to whether the Capps' relied on the Lakes' financial statements. Thus, the bankruptcy court did not abuse its discretion in considering this testimony.

■ Finally, the plaintiffs' appeal of this evidentiary ruling is futile because even though the bankruptcy court ruled that Mr. Capps' statement was relevant to the court's determination of reliance, it is clear from the bankruptcy court's memorandum of decision that it did not base its findings concerning the plaintiffs' reliance on this testimony. Thus, there is no support for the plaintiffs' contention that they were unduly prejudiced by this evidentiary ruling. *Sternberg*, 85 F.3d at 1408.

### V. CONCLUSION

Under California law, a state court default judgment is entitled to collateral estoppel effect in the bankruptcy court. However, under an exception to state and federal comity, if the underlying judgment was procured through extrinsic fraud, it is subject to collateral attack.

---

9. In relevant part, the applicable rule provides:

 **Rule 801. DEFINITIONS**
 . . . .

 **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
 . . . .

 (2) *Admission by Party–Opponent.* The statement is offered against a party and is (A) the party's own statement in either an individual or representative capacity or (B) a state-

ment of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The record reflects that the debtors may have a colorable claim to relief from the default judgment based upon extrinsic fraud and, therefore, are entitled to further proceedings to determine the validity of the plaintiffs' state court judgment for fraud. Accordingly, we REVERSE and REMAND with instructions for the bankruptcy court to consider the debtors' motion to vacate in light of these proceedings.

Based upon our decision to REVERSE the judgment with respect to the state court default judgment, we need not decide the plaintiffs' cross-appeal of the bankruptcy court's determination that the punitive damages were dischargeable.

With respect to the plaintiffs' cross-appeal of the bankruptcy court's evidentiary ruling, we conclude that the bankruptcy court did not abuse its discretion in considering this testimony. Accordingly, we AFFIRM the bankruptcy court's ruling that the alleged debts arising from the plaintiffs' investments in the golf course project are dischargeable.