# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30512

MICHAEL HOUSTON; STEVE HOUSTON,

Plaintiffs–Appellants

v.

VENNETA QUEEN; EP ENERGY E&P COMPANY, L.P.;
formerly known as El Paso Production Company;
formerly known as El Paso Production Oil & Gas, L.P.,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:13-CV-2738

Before SMITH, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:*

Pro se Plaintiffs–Appellants Michael and Steve Houston appeal the dismissal of their suit for declaratory and injunctive relief arising from an adverse Louisiana state-court judgment of possession. The district court concluded that the *Rooker–Feldman* doctrine deprived it of subject-matter jurisdiction to entertain the Houstons' action. Agreeing with the district court that *Rooker–Feldman* bars the Houstons' claims, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2015

Lyle W. Cayce
Clerk

No. 14-30512

## I. FACTUAL AND PROCEDURAL BACKGROUND

Brothers Michael and Steve Houston have been litigating their inheritance under the wills of their grandfather, McKinley Houston, and their father, Mack Houston, Jr., since the late 1990s.

In 1981, McKinley Houston inherited a one-quarter interest in a tract of property in DeSoto Parish, Louisiana. McKinley Houston devised his interest to his sons, Mack Houston, Jr. and Carlyle Houston. Carlyle Houston died in 1993 with no heirs, while Mack Houston, Jr. died in 1994 survived by his sons, Michael and Steve Houston, and his live-in girlfriend, Daisy Cotton. A year before his death, Mack Houston, Jr. executed a will devising all of his property to Cotton and appointing her executor. Cotton applied for a small-estate administration in Illinois, Mack Houston, Jr.'s state of residence, and submitted the will to probate in August 1994. The Houston brothers contest the validity of this will and this estate administration.

### A.     State Court Proceedings

The Houston brothers first challenged their father's will in Illinois state court in 1997. The state court denied their petition and denied reconsideration in separate handwritten orders, and the First Judicial District Appellate Court of Illinois affirmed.

In August 2004, Cotton filed a petition for appointment and for ancillary probate of the estates of McKinley Houston, Carlyle Houston, and Mack Houston, Jr. ("the Cotton action") in Louisiana's 11th Judicial District Court (JDC). As part of the petition, Cotton filed a sworn descriptive list claiming ownership of the DeSoto Parish property. The Houston brothers opposed Cotton's petition, and in May 2005, the 11th JDC dismissed the petition with prejudice.

## No. 14-30512

Cotton died in Texas in August 2007. In January 2009, Joyce Q. Ross, Cotton's daughter-in-law and executor of her estate, filed a petition to open an ancillary succession for Cotton ("the Ross action") in Louisiana's 42nd JDC. The 42nd JDC admitted Cotton's will—which devised her property to her children—to probate. The Houston brothers contest the validity of this will as well.

Despite the supposed dismissal with prejudice of Cotton's petition to probate the Houston estates, the proceedings in the Cotton action apparently continued until February 2013.[1] The record contains little evidence of what transpired in the interim. In a hearing on October 15, 2012, with all parties present, the 42nd JDC set the matter for trial on February 14, 2013. The Houston brothers reportedly objected to this hearing and to the trial date, though the precise basis of their objections is unclear. On February 6, 2013, the Louisiana Supreme Court denied without written opinion the Houston brothers' application for supervisory and/or remedial writs in the Cotton action. *In re Succession of Houston*, 2013/0243 (La. 2/6/13); 107 So. 3d 639.[2]

On the morning of trial, the Houston brothers declined to appear and instead filed a motion to continue and a motion to recuse both judges of the 42nd JDC. According to Judge Adams, who presided over the hearing, the Houston brothers alleged, *inter alia*, that the judges, the clerk, and Cotton's

---

[1] Although the Cotton action was commenced and purportedly dismissed in the 11th JDC, the proceedings continued and ultimately concluded in the 42nd JDC. Nothing in the record explains this discrepancy.

[2] None of the writs referenced in this opinion appear in the record or in public databases, and none of the Louisiana Supreme Court writ denials that are publicly accessible contain written opinions. Except where otherwise noted, the Houston brothers have not identified the grounds for their writ applications or the status of their appeals, either in their briefing or in their contributions to the record.

attorneys[3] committed fraud and conspired to deprive them of due process. Judge Adams declared that the allegations in the motion were "totally and completely groundless," as well as so "insulting and abusive" as to "raise[] the issue of direct contempt" under article 22 of the Louisiana Code of Civil Procedure. Although he recognized that motions to recuse ordinarily are referred to another judge for resolution, Judge Adams explained that "when this Court is faced with parties who have blatantly impugn[ed] the authority and dignity of the Court with direct contempt in order to gain a subversive advantage . . . , only the Judge presiding over the case is the proper party to try the claimants for contempt." In addition, Judge Adams noted that both the Louisiana Supreme Court and the Second Circuit Court of Appeal had denied the Houston brothers' writ applications concerning the alleged improprieties on the part of the court and opposing counsel. Judge Adams denied the Houston brothers' motions and proceeded with the trial.

Judge Adams entered judgment against the Houston brothers on February 25, 2013. The judgment denied the Houstons' motions, ordered the Houstons to appear and show cause why they should not be held in contempt, and found, based "upon the evidence and testimony presented [at trial], and the law of Louisiana," in favor of Cotton.[4]

---

[3] By this time, Venneta Queen, the administrator of Cotton's succession, had replaced Cotton in the action.

[4] Specifically, the judgment concluded that: (1) Mack Houston, Jr.'s will was valid under the law of Illinois; (2) "issues related to the validity of the will" were "fully litigated in Illinois and denied and upheld on appeal," and therefore the will was valid and presented for probate in Louisiana; (3) under either the law of Illinois or Louisiana, Mack Houston, Jr. would have been in sole possession of any property that McKinley Houston inherited in Louisiana; (4) the Houston brothers' claims of forced heirship to the estate of Mack Houston, Jr. were without merit under article 3533 of the Louisiana Civil Code; (5) the Estate of Daisy Cotton was entitled to full possession of Mack Houston, Jr.'s one-quarter interest in the DeSoto Parish property and related mineral interests; and (6) the Houston Brothers would bear all costs of the proceedings.

No. 14-30512

On March 27, 2013, the Houston brothers successfully moved for suspensive appeal in the Cotton action. The court set security at $400,000—reflecting the amount of mineral royalties being held in abeyance as a result of the proceedings—and the Houstons filed a notice of intent to seek supervisory writs challenging the amount of security. The status of this appeal is uncertain, *see supra* note 2, but in April and September 2013, the Louisiana Supreme Court denied without written opinions two applications by the Houston brothers for supervisory and/or remedial writs in the Cotton action, *In re Succession of Houston*, 2013-0500 (La. 4/5/13); 110 So. 3d 591; *In re Succession of Houston*, 2013-1716 (La. 9/13/13); 120 So. 3d 704.

On June 4, 2013, the Houston brothers filed a petition for possession of the DeSoto Parish property in the name of McKinley Houston ("the Houston action") in the 42nd JDC. As with the Ross and Cotton actions, the status of the Houston action is not clear from the record or from public databases. In January and February 2014, however, the Louisiana Supreme Court denied without written opinions two applications by the Houston brothers for supervisory and remedial writs in the Houston action. *In re Succession of Houston*, 2013-2480 (La. 1/17/14); 130 So. 3d 946; *In re Succession of Houston*, 2013-2779 (La. 2/14/14); 132 So. 3d 964. Additionally, in November 2014, the Court declined to consider another application by the Houston brothers for supervisory and remedial writs in the Houston action on the ground that the application was not timely filed. *In re Succession of Houston*, 2014-2144 (La. 11/26/14); 152 So. 3d 895. The Court denied reconsideration in January 2015. *In re Succession of Houston*, 2014-2144 (La. 1/16/15); --- So. 3d. ----.

**B.     Federal Court Proceedings**

On September 23, 2013, the Houston brothers filed suit in federal court, seeking declaratory and injunctive relief relating to the judgment of possession

in the Cotton action. They named as defendants both Venneta Queen, the administrator of the succession of Daisy Cotton, and EP Energy E&P Company, L.P., which was not a party to the state-court suit but held an oil, gas, and mineral lease on the DeSoto Parish property. Their complaint contained 223 paragraphs of factual and legal claims, spanning 66 pages, and listed 15 counts of requested relief, which were limited to a series of declaratory judgments, preliminary and permanent injunctions against enforcement of the state-court judgment, the costs of litigation, and any other relief the court deemed proper.

EP Energy and Queen both moved to dismiss, while the Houston brothers moved for expedited discovery to obtain evidence of their opponents' alleged conspiracy with the court. In its motion, EP Energy invoked the *Rooker–Feldman* doctrine.

While these motions were under consideration, the Houston brothers filed a petition in the 42nd JDC to annul the probated testament of Mack Houston, Jr. and the judgment of possession in favor of Daisy Cotton in the Cotton case. They based their petition on article 2931 of the Louisiana Code of Civil Procedure and article 3497 of the Louisiana Civil Code, which together permit annulment of a probated will by a direct action brought in the succession proceeding within five years of the will's admission to probate. There is no evidence of the status of this petition in the record or in public databases, and neither the Second Circuit Court of Appeal nor the Louisiana Supreme Court has any record of the case.

The district court granted EP Energy's motion and denied the Houston brothers' motion. The district court found that the Houston brothers sought to overturn the judgment of the 42nd JDC—and, by extension, the Illinois state

No. 14-30512

courts before it—and that the *Rooker–Feldman* doctrine correspondingly deprived the court of subject-matter jurisdiction.

The Houston brothers unsuccessfully moved to alter or amend the judgment, then filed the instant appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The Houston brothers invoked both federal question jurisdiction and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, respectively. Although the district court found that it lacked subject-matter jurisdiction under the *Rooker–Feldman* doctrine, we have authority to review the district court's order of dismissal under 28 U.S.C. § 1291. We perform this review de novo. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013).

## III. DISCUSSION

Before this Court, the Houston brothers purport to raise nine issues.[5] Because we decide that *Rooker–Feldman* indeed applies to this case, we need not reach the Houston brothers' remaining claims of error.

The party asserting federal jurisdiction bears the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). While we construe pro se litigants' pleadings liberally, *see Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (per curiam), we do not excuse pro se litigants' failure to comply with the pertinent rules of procedure and substantive law, *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam). Of particular importance here, the Federal Rules of Appellate Procedure impose on the

---

[5] However, these points do not neatly correspond to the arguments actually briefed by the Houston brothers, which include the application of the *Rooker–Feldman* doctrine, federal-court review of a state judge's refusal to recuse himself, the district court's refusal to rule on the motion to disqualify opposing counsel, the district court's denial of the Houston brothers' motion for expedited discovery, the legal standard for a motion to dismiss, and the application of the Full Faith and Credit Clause to judgments of probate as to immovable real property. As the application of *Rooker–Feldman* controls federal jurisdiction, we must address this issue first. *Truong*, 717 F.3d at 381–82.

appellant the obligation to present an adequate record on appeal. Fed. R. App. P. 10(b)(2); *see Adams v. Johns–Mansville Sales Corp.*, 783 F.2d 589, 592 (5th Cir. 1986).

The *Rooker–Feldman* doctrine occupies "narrow ground": it bars only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Exxon*, the Court's most authoritative recent pronouncement on *Rooker–Feldman*, makes plain that the doctrine has four elements: (1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment. *See id.*

This Court has observed that "[a] state court judgment is attacked for purposes of Rooker–Feldman 'when the [federal] claims are "inextricably intertwined" with a challenged state court judgment,' or where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.'" *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (second alteration in original) (citations omitted). However, *Rooker–Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" *Id.* (quoting *Exxon*, 544 U.S. at 293). Indeed, the doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Id.* Nonetheless, a party cannot escape *Rooker–Feldman* by "casting . . . a complaint in the form of a civil rights action." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994).

No. 14-30512

There is little genuine dispute that three of the four elements of *Rooker–Feldman* are satisfied here: The Houston brothers lost in state court, they allege injuries caused by the Louisiana judgment, and they request relief amounting to review and reversal of that judgment. Although they assert claims of harm ostensibly separate from the judgment of possession—e.g., fraud and violation of due process—they seek only declaratory and injunctive relief relating to the state-court judgment, not damages from these purportedly independent wrongs. This undermines the Houston brothers' independent-claim argument.[6] Indeed, "reversal of the state court's . . . judgment would be a necessary part of the relief requested by [the Houston brothers], and the object of [the Houston brothers'] claims is the state . . . judgment itself." *See Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011) (per curiam). Moreover, each of the Houston brothers' fraud allegations was either explicitly or implicitly addressed by the state court: the 42nd JDC declared the Houston brothers' claim of a conspiracy to defraud them "totally and completely groundless,"[7] and in ruling in Queen's favor the court impliedly found that Cotton had filed a valid petition for possession.

---

[6] *Compare Truong*, 717 F.3d at 383 (holding that the plaintiff's state unfair-trade-practice claims were independent of a state foreclosure judgment because the plaintiff "did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the [defendants'] actions, not injuries arising from the foreclosure judgment"), *with Morris v. Am. Home Mortg. Serv., Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011) (per curiam) (holding that the plaintiff's claims for unlawful debt-collection practices in connection with a state foreclosure judgment were barred by *Rooker–Feldman* "because, crucially, the only relief [the plaintiff] sought was the setting aside of the state foreclosure judgment and staying of the execution of the writ of possession," which "demonstrate[d] that [the plaintiff's] injuries arose from the state court judgments").

[7] To the extent that the Houston brothers claim their accusations of fraud and bias are necessarily independent of the judgment, we have previously rejected this argument on similar facts. *See Turner v. Cade*, 354 F. App'x 108, 110–11 (5th Cir. 2009) (per curiam) (holding that allegations of bias and impropriety by the judge and opposing counsel were not independent for *Rooker–Feldman* purposes); *Price v. Porter*, 351 F. App'x 925, 926–27 (5th Cir. 2009) (per curiam) (holding that *Rooker–Feldman* barred claims that a state judge should

No. 14-30512

The only *Rooker–Feldman* element subject to dispute is that of timing— the state-court judgment that caused the Houston brothers' injuries must have been "rendered" before the district court proceedings began. The Houston brothers contend that "all state court judgments were not rendered before the district court proceedings commenced" because "the time to appeal the final writ [in the Cotton action] had not expired" and the Houston brothers had just initiated the Houston action and filed a petition to annul Mack Houston, Jr.'s will and Daisy Cotton's judgment of possession. The Appellees respond that the contested judgment of possession was signed more than six months before the Houston brothers filed suit in federal court, and the Louisiana Supreme Court denied the Houston brothers' writ applications on three occasions—most recently, ten days before the inception of the federal action. Further, the Appellees assert, "[i]t has now been over one year since the last writ denial, and there is no indication that any proceedings continued in Louisiana state courts."

There is disagreement among the circuits as to whether all state proceedings, including appeals, must have concluded before the federal suit is initiated in order for *Rooker–Feldman* to apply. *See Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F. Supp. 2d 579, 588–90 (E.D. La. 2011) (identifying and explaining the split in authority); *cf.* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4469.1 (2d ed. 2002 & Supp. 2014) ("One question that may complicate application of the [*Exxon*] decision will arise from identifying the level of finality that must be reached by a state decision to invoke Rooker–Feldman principles as to any later-filed federal action."). Indeed, this Court has taken inconsistent positions on the matter: In

have been recused). Although these cases are not precedential, they may be persuasive authority. *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).

No. 14-30512

*Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986), this Court applied *Rooker–Feldman* to bar a federal suit despite the pendency of an appeal in state court; but in *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), this Court declined to apply *Rooker–Feldman* because the case was on appeal to a state appellate court, observing that "[*Exxon*] tells us when a state court judgment is sufficiently final for operation of the *Rooker–Feldman* doctrine: when 'the state proceedings [have] ended.'"

Although *Hale* predated *Exxon*, the split in authority following *Exxon* on the question of finality suggests that that case did not "unequivocally" overrule *Hale. See Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." (second alteration in original)). Further, the portion of *Exxon* quoted in *Rowley*—an unpublished opinion with limited precedential value under 5th Circuit Rule 47.5.4—is found not in *Exxon*'s holding but in its description of the *Rooker* and *Feldman* cases, *see Exxon*, 544 U.S. at 291. *Exxon*'s holding refers only to "state-court judgments rendered before the district court proceedings commenced." *Id.* at 284. Accordingly, we appear to be bound by *Hale* pursuant to this Circuit's rule of orderliness. *See Technical Automation Servs. Corp.*, 673 F.3d at 405–07. We need not take a definitive position on the continued vitality of *Hale*, however, because even under *Rowley*'s more restrictive view of *Rooker–Feldman*, the Houston brothers have not adequately shown that relevant state proceedings remain ongoing.

Under *Hale*, the alleged pendency of additional state-court proceedings is immaterial to the application of *Rooker–Feldman* when the federal suit seeks review and rejection of a discrete final state-court judgment. *See Hale*, 786 F.2d

No. 14-30512

at 691. Here, as explained above, the Houston brothers plainly have sought federal review of a single state-court judgment: the 42nd JDC's judgment of possession in favor of Daisy Cotton and the associated rulings contained in that judgment. The judgment was issued in February 2013, and the Louisiana Supreme Court denied three writ applications filed by the Houston brothers before they initiated this suit in September 2013. Regardless of whether the Houston brothers sought further review of this judgment in the Louisiana courts, a straightforward reading of *Hale* bars the instant suit.

Even assuming that *Hale* did not survive *Exxon*, though, the result is no different. The Houston brothers contend only that the time to appeal the Louisiana Supreme Court's denial of their most recent writ had not expired when they filed their federal suit, and that they had initiated new state proceedings by this time. They present no evidence that they actually *did* appeal the denial of their writs, and even if the Houston action and the petition to annul the adverse judgments[8] could qualify as state proceedings relevant to the *Rooker–Feldman* analysis—if anything, they seem collateral to the operative judgment—the record is devoid of any indication of the status of these proceedings. *See supra* note 2. As the appellants, it is the Houston brothers' burden to ensure that the record on appeal is adequate to assess their claims of error. Fed. R. App. P. 10(b)(2). And as the party seeking a federal forum, it is also the Houston brothers' burden to prove the factual requisites of our jurisdiction. *See Kokkonen*, 511 U.S. at 377. They meet neither burden here. We therefore agree with the district court that the judgment of possession is a final judgment within the meaning of *Rooker–Feldman*, and we conclude that all four elements of the *Rooker–Feldman* doctrine are satisfied.

---

[8] Notably, the Houston brothers filed this petition *after* they initiated their federal action.

12

No. 14-30512

Undeterred, the Houston brothers attempt to invoke the purported "void *ab initio* exception" to *Rooker–Feldman*, which provides that a state-court judgment that is void for want of subject-matter or personal jurisdiction, or that was obtained by fraud, is subject to collateral attack in federal court. *See, e.g.*, *In re Lake*, 202 B.R. 751, 758 (B.A.P. 9th Cir. 1996). Neither this Court nor the Supreme Court has endorsed this exception as the Houston brothers advocate, and the cases that do recognize this exception—the Houston brothers cite none in their briefs—indicate that it is presently limited to the bankruptcy context. *See Schmitt v. Schmitt*, 324 F.3d 484, 487 (7th Cir. 2003) ("While a void *ab initio Rooker–Feldman* exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here.").[9]

Assuming *arguendo* the exception applies here, it is unavailing to the Houston brothers. As the district court observed, the 42nd JDC determined that it had both subject-matter jurisdiction and personal jurisdiction over the Houston brothers, and this determination "ordinarily qualifies for full faith and credit, so long as [it] was fully and fairly litigated in the court that rendered the judgment," *Marshall v. Marshall*, 547 U.S. 293, 314 (2006). Although the Houston brothers complain that they were not present for the "sham trial," the record indicates that they waived any objection to personal jurisdiction through their appearances in state court, *see, e.g.*, *Dazet Mortg. Solutions LLC v. Faia*, 2012-0486, pp. 4–5 (La. App. 5 Cir. 4/10/13); 116 So. 3d 711, 715–16, and that their absence from the trial was a strategic decision.

---

[9] *See also Casale v. Tillman*, 558 F.3d 1258, 1261 (11th Cir. 2009) (per curiam); *In re Singleton*, 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999) (per curiam); *In re Lake*, 202 B.R. at 758; *In re James*, 940 F.2d 46, 52 (3d Cir. 1991).

No. 14-30512

Further, the district court sua sponte engaged in a jurisdictional analysis out of an abundance of caution, and we find no error in its independent conclusion concerning the state court's jurisdiction. As to whether the judgment was procured by fraud, we note only that both the state court and the district court found the Houston brothers' allegations baseless, and that the Houston brothers' allegations of fraud are uniformly conclusory and unsupported by record evidence.

Absent an exception, the *Rooker–Feldman* doctrine applies to deprive the federal courts of subject-matter jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.