**In re Steven Scott BRANAM, Debtor.**

**Steven Scott BRANAM, Appellant,**

**v.**

**Keith CROWDER; and Fremont Compensation Insurance Company, Appellees.**

**BAP No. NC–98–1262–RPMe. Bankruptcy No. 96–58954–JRG. Adversary No. 97–5076.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Oct. 7, 1998.

---

**21.** *Id.* at 650.

**22.** *In re Gateway Center Bldg. Investors, Ltd.,* 95 B.R. 647, 651–54 (Bankr.E.D.Mo.1989).

**23.** 11 U.S.C. § 544(a)(1).

**24.** 11 U.S.C. § 547(b).

 

James W. Nelson, San Jose, CA, for Steven Scott Branam.

Phillip G. Svalya, Fine & Woliung, Long Beach, CA, for Appellees.

Before: RUSSELL, PERRIS, and MEYERS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

This appeal addresses the preclusive effect of a state court civil jury verdict for assault and battery in a nondischargeability proceeding under § 523(a)(6).[1] Appellee Keith Crowder won a tort judgment against his co-employee, appellant Steven Scott Branam. In a subsequent bankruptcy case, the bankruptcy court concluded that the findings contained in the jury's special verdict precluded Branam from relitigating the issue of whether the judgment arose from a willful and malicious injury. The court entered summary judgment in Crowder's favor.

Branam filed a motion for reconsideration and a motion for joinder of his employer's workers' compensation insurance carrier as an additional plaintiff in the adversary proceeding. The court denied the motions, and Branam appeals. We AFFIRM.

## I. FACTS

Appellant Steven Scott Branam was employed as a salesman and appellee Keith Crowder was employed as an assistant service manager by Allison Bavarian, Inc., dba Allison BMW ("Allison"), a BMW auto dealership located in Sunnyvale, California. On February 19, 1993, Branam and Crowder became involved in an altercation on Allison's business premises over the installation of windshield wiper blades on a BMW.

Their descriptions of the incident were vastly different. According to Branam, Crowder, who Branam claims instigated the incident, refused his request for help with the wiper blades, followed him to the showroom floor while yelling at him, dared Branam to hit him, and bumped up against him. Branam grabbed Crowder's shirt after their supervisor stepped between them, and then went outside.[2] According to Crowder, Branam, who Crowder claims instigated the incident, became enraged when Crowder refused to help, grabbed him by the throat with his left hand, and pushed and twisted him against a vehicle on the showroom floor.[3]

In January 1994, Crowder filed a complaint in the Superior Court for the State of California, County of Santa Clara, seeking

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. On appeal, Branam describes the incident as follows: "[Branam and Crowder] became involved in an argument when BRANAM requested the assistance of [Crowder]. The argument escalated after [Crowder] came to the showroom floor and was bumping up against BRANAM. BRANAM's supervisor got between them and BRANAM reached around him and grabbed [Crowder's] shirt. He briefly held him and let go and left the showroom. Another employee restrained [Crowder] after hearing the argument." Appellant's Opening Brief, p. 4.

3. On appeal, Crowder describes the incident as follows: "... BRANAM grabbed CROWDER by the throat; threatened to kill him; and slammed

him backward over a car parked in the showroom of their employer. Shouting threats, BRANAM choked CROWDER with his left hand and raised his right hand in a fist. Using his 260 lbs. body, BRANAM bent CROWDER backward against the trunk of the car, crushing his spine. CROWDER is a slight man, who weighed only 130 pounds. With BRANAM on top of him, CROWDER could not move or speak until the manager was able to pull BRANAM away. The red marks left by BRANAM's hand around CROWDER's throat extended from ear to ear in the center of his neck. BRANAM's handprint on CROWDER's neck became dark and remained like bruises for another week." (Emphasis and citations to record omitted.) Appellee's Opening Brief, p. 3.

damages against Branam for personal injury, assault and battery, and intentional tort, and against Allison for ratification of the intentional tort (the "state court action"). In his answer, Branam asserted as an affirmative defense the exclusive remedy provision of CAL. LABOR CODE § 3601(a)(1), which limits recovery for an assault in the workplace to compensation under the workers' compensation laws unless the injury resulted from the other employee's "willful and unprovoked physical act of aggression."

A two-day arbitration hearing was held in January 1995. The arbitrator issued an Award of Arbitration in February 1995, denying Crowder's claims and awarding statutory costs to Branam and Allison. The court denied a motion for summary judgment by Allison in April 1996, however, stating, *inter alia*, that "There are material inconsistencies between the version[s] of the subject incident provided by [Allison and its employees]; the inconsistencies are such that both reports cannot be true and accurate."

A two week trial began in the state court action on June 3, 1996. The jury returned a special verdict in Crowder's favor on June 18, 1996, following sworn testimony by witnesses, argument by counsel, receipt of jury instructions from the court, and deliberations. The jury awarded Crowder $750,000 in economic damages, and held Branam and Allison jointly and severally liable on the judgment. The jury did not award punitive damages.

On June 19, 1996, the state court entered a Judgment on Special Verdict, which incorporated the jury's special verdict. The Judgment included the following findings by the jury:

*Question No. 1:* Did defendant BRANAM intend to cause a harmful or offensive contact with Plaintiff?

Answer "yes" or "no."

Answer: YES

. . . .

*Question No. 2:* Did Plaintiff CROWDER suffer injury as a result of Defendant BRANAM'S actions?

Answer "yes" or "no."

Answer: YES

. . . .

*Question No. 3:* Did Plaintiff CROWDER consent to defendant BRANAM'S actions?

Answer "yes" or "no."

Answer: NO

. . . .

*Question No. 4:* Did the conditions of compensation set forth in labor Code § 3600 concur?

Answer: YES

. . . .

*Question No. 5:* Were plaintiff CROWDER'S injuries proximately caused by Defendant BRANAM'S willful, unprovoked, physical act of aggression?

Answer "yes" or "no."

Answer: YES

. . . .

*Question No. 6:* Did defendant BRANAM honestly and reasonably believe Plaintiff CROWDER was about to inflict harm on him?

Answer "yes" or "no."

Answer: NO

. . . .

*Question No. 7:* Did defendant BRANAM use only such force against Plaintiff CROWDER as appeared reasonably necessary under the circumstances?

Answer "yes" or "no."

Answer: NO

. . . .

*Question No. 8:* Did Defendant ALLISON BMW ratify Defendant BRANAM's actions?

Answer "yes" or "no."

Answer: YES

. . . .

*Question No. 10:* Do you find by clear and convincing evidence that Defendant Branam committed malice in the conduct upon which you base your finding of liability for assault and battery?

Answer "yes" or "no."

Answer: NO

. . . .

In August 1996, the state court held a hearing on Branam's motion for a new trial and to tax costs, Allison's motion for a judgment notwithstanding the verdict and new trial, and Crowder's motion for attorneys' fees. On September 6, 1996, the state court entered an order denying all of the motions and authorizing Crowder to recover costs in the amount of $125,172.85 from Branam and $130,253.25 from Allison. The judgment against Branam thus totaled $875,172.85. Branam and Allison filed separate appeals with the California Court of Appeal.

Branam filed a voluntary chapter 7 case on November 20, 1996, listing Crowder's $875,-172.85 judgment as an unsecured debt on his schedules. Crowder filed an adversary proceeding against Branam on February 13, 1997, seeking to have the debt determined nondischargeable under § 523(a)(6). On the same day, Branam's appeal to the California Court of Appeal was dismissed.[4]

Crowder filed a motion for summary judgment on April 25, 1997, contending that the findings in the state court Judgment on Special Verdict contained all of the elements necessary to establish a "willful and malicious" injury for purposes of § 523(a)(6), and Branam was therefore collaterally estopped from relitigating the state court action in bankruptcy court. Branam's response contended that the jury's failure to find by clear and convincing evidence that Branam acted with "malice" created a triable issue of fact which precluded entry of summary judgment. A hearing on the motion was scheduled for June 5, 1997.

On June 4, 1997, one day before the hearing, Branam filed a "Declaration of James W. Nelson [Branam's bankruptcy counsel] Pursuant to Rule 56(f) FRCP (Unavailable Affidavits)." The declaration asserted that Branam could not present a sufficient opposition to the motion because the evidence needed for affidavits and declarations was unavailable. The declaration claimed that the nec-essary evidence was contained in the files of the state court action, which were amassed over a period of more than three years by Branam and his state court counsel; and that the files, which were contained in six "stor-all file boxes," were requested shortly after the complaint in the nondischargeability proceeding was served but not delivered to Nelson's office until May 2, 1997. Crowder's reply included a request for sanctions against Branam and Nelson for non-compliance with the filing deadlines of Local Rule 7007-1.[5]

The court stated at the outset of the hearing on June 5, 1997, that it considered the motion unopposed because no opposition had been received. The court then detailed the factual and legal basis for its tentative decision to enter summary judgment in Crowder's favor based on collateral estoppel principles. Following argument by Branam's counsel, however, the court offered him a choice between immediate entry of summary judgment, or a continuance of the hearing conditioned on payment of $750 in sanctions to Crowder's counsel. Branam's counsel chose the second option.

On June 16, 1997, the court entered an order that continued the hearing to July 10, 1997, required Branam's counsel to pay sanctions for violating Local Rule 7007-1, prohibited Branam from filing additional pleadings, and allowed Crowder to reply to Branam's June 4 opposition.

The court began the July 10, 1997 hearing by tentatively ruling that all of the elements of § 523(a)(6) except "malice" had been established via collateral estoppel. The court again detailed the legal basis for its determination. The court stated that the parties' emphasis on the jury's failure to find malice by clear and convincing evidence was irrelevant because of the different burdens of proof required to establish malice under California and federal law. The court requested additional briefing on whether Branam's conduct was "malicious" under federal law for

---

4. According to the Court of Appeal, Branam's appeal was dismissed because Branam "failed to file a brief after notice given under rule 17(a), California Rules of Court."

5. Local Rule 7007-1 of the United States Bankruptcy Court for the Northern District of California provides, in pertinent part:

   (b) Opposition. Any opposition to a motion shall be filed and served at least 14 days before the hearing date.

§ 523(a)(6) purposes, and continued the hearing to September 11, 1997. Both parties submitted numerous additional points and authorities and declarations in connection with the continued hearing.

At the September 11 hearing, Crowder's counsel complained that Branam's supplemental pleadings were not limited to the issue specified by the court and that Branam was impermissibly attempting to retry the entire state court action. The court refused to allow the parties to present argument regarding the facts of the incident, and again noted that the jury finding regarding malice was a "red herring." At the conclusion of the hearing, the court took the motion under submission.

On September 23, 1997, Branam filed a motion under FED.R.CIV.P. 19 to join Allison's workers' compensation insurance carrier, Fremont Corporation ("Fremont"), as a plaintiff. The motion argued that Allison had asserted a claim for set off in the state court action, and that unless Fremont were joined in the nondischargeability litigation, a bankruptcy court judgment against Branam would foreclose his (purported) state court right to a credit for any workers' compensation funds paid by Allison to Crowder. Crowder and Fremont filed oppositions.

On October 2, 1997, the court issued its Findings of Fact and Conclusions of Law and Judgment on the summary judgment motion. The court determined that Branam's conduct was willful and malicious under federal law and that the state court judgment was binding via collateral estoppel in the bankruptcy court, and granted summary judgment in Crowder's favor. The court entered a Final Judgment on November 3, 1997, declaring the full amount of the judgment nondischargeable and awarding statutory costs to Crowder.

On November 10, 1997, Branam filed a motion for reconsideration under FED. R.CIV.P. 59(e) and a motion for a stay of the proceedings to enforce the judgment under Rule 7062 and FED.R.CIV.P. 62(b). The reconsideration motion contended, *inter alia*, that:

(1) Branam should be allowed to present "newly discovered" and "previously unavailable" evidence which would demonstrate that he had been denied a fair trial in the state court. As a result of a conflict of interest, Branam's state court counsel entered into a stipulation during trial that rendered the judgment in that action a "consent judgment." A consent judgment was not entitled to preclusive effect in the nondischargeability litigation;

(2) The judgment should be set aside because the underlying obligation consisted primarily of contingent attorneys' fees owed to Crowder's counsel, which were dischargeable and subject to collateral attack;

(3) The entire case should be retried in the bankruptcy court because Crowder's counsel made numerous prejudicial misrepresentations in his summary judgment pleadings; and

(4) The judgment should be set aside because Crowder obtained the state court judgment through fraud. The state court lawsuit was motivated by Crowder's personal financial hardship and pre-existing illness, and constituted a conspiracy between Crowder and his counsel to defraud Branam, Allison and Fremont.

On December 11, 1997,[6] the court held a hearing on Branam's motions for reconsideration, stay of proceedings,[7] and joinder. The court explained its tentative decision to deny the reconsideration motion and its reasons for not going behind the judgment to evaluate the evidence previously presented to the jury. The court heard argument of counsel regarding the joinder motion, which focused on Allison's purported right to set off the amount Fremont had paid Crowder and the impact that such a set off might have on Crowder and Branam. The court then al-

---

**6.** Also on this date, the California Court of Appeal issued its decision in Allison's appeal, affirming the state court judgment and awarding costs on appeal to Crowder.

**7.** The court held a brief *ex parte* hearing on November 17, 1997, to consider the procedural timeliness of the stay motion. The court determined that the motion was timely and scheduled a hearing on the merits of the motion for December 11, 1997.

lowed Branam's counsel over one hour to add to the record. At the conclusion of the hearing, the court orally denied all of the motions. The court reserved jurisdiction over the limited issue of set off in connection with the joinder motion.

On March 9, 1998, while the matter was under submission, Branam filed a Statement of Recent Development which provided the court with a copy of *Kawaauhau v. Geiger* (decided on March 3, 1998),[8] in which the United Supreme Court considered the meaning of "willful" under § 523(a)(6). On March 30, 1998, the court entered an order denying the motions for reconsideration and joinder.[9] The order specifically discussed *Geiger* and stated that that case did not change the bankruptcy court's prior decision that the debt was nondischargeable under § 523(a)(6). Branam appeals the order denying the motions for reconsideration and joinder.

## II.  ISSUE

Whether the bankruptcy court erred in applying the doctrine of collateral estoppel to the state court civil tort judgment, entering summary judgment against appellant, and precluding appellant from relitigating the issue of the "willful and malicious" nature of appellant's conduct.

## III.  STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") reviews the granting of summary judgment *de novo*, making all reasonable inferences in favor of the non-moving party to determine whether there exist any genuine issues of

8.  —— U.S. ——, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

9.  The court also entered an order on March 30, 1998 that denied Branam's motion to stay enforcement of the proceedings.

10.  28 U.S.C. § 1738 provides:

§ 1738.  State and Territorial statutes and judicial proceedings; full faith and credit

. . . .

[State] . . . judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

material fact which would preclude judgment in favor of the movant as a matter of law. *In re Krishnamurthy*, 209 B.R. 714, 718 (9th Cir. BAP 1997), *aff'd* 125 F.3d 858, 1997 WL 599537 (9th Cir.1997), *cert. denied sub nom.*, —— U.S. ——, 118 S.Ct. 2328, 141 L.Ed.2d 702 (1998). The availability of collateral estoppel is a question of law which is reviewed *de novo*. *Id.* at 718, 118 S.Ct. 2328; *In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir.1995). Denial of a motion for reconsideration is reviewed for an abuse of discretion. *In re Negrete*, 183 B.R. 195, 197 (9th Cir. BAP 1995), *aff'd* 103 F.3d 139, 1996 WL 717144 (9th Cir.1996).

## IV.  DISCUSSION

### 1.  *Collateral estoppel and entry of summary judgment*

■■■■ The rules of federal and state comity require that federal courts give prior state court judgments the same preclusive effect as the state court that rendered the judgment. 28 U.S.C. § 1738;[10] *Nourbakhsh*, 67 F.3d at 801. As a matter of full faith and credit, a federal court must determine the preclusive effect of a prior state court judgment by applying the collateral estoppel law of the state that rendered the prior state court judgment—in this case, California.[11] *Id.* The doctrine of collateral estoppel applies in nondischargeability proceedings in bankruptcy court. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

11.  In order for a prior judgment to be entitled to collateral estoppel effect under California law, five elements must be met: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) it must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *In re Kelly*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd* 100 F.3d 110 (9th Cir.1996); *see also Lucido v. Superior Court*, 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990), *cert. denied* 500 U.S. 920, 111 S.Ct. 2021, 114 L.Ed.2d 107 (1991).

Section 523(a)(6), the "willful and malicious" injury exception to discharge, provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

For purposes of § 523(a)(6), the Supreme Court has defined a "willful and malicious" act as an act "done with the actual intent to cause injury." *Geiger*, 118 S.Ct. at 977.

Branam argues at length that the application of collateral estoppel was improper for a variety of reasons. First, he contends that the burden of proof in nondischargeability proceedings involving intentional torts should be raised from the "preponderance of the evidence" standard enunciated by the United States Supreme Court in *Grogan, supra,* to the higher "clear and convincing evidence" standard applied under California law. He also contends that the Supreme Court carved out an exception in *Grogan* for civil actions involving "particularly important interest[s] or rights," and that the facts of this case fall within such an exception.

Next, Branam asserts that the jury's failure to find malice created a triable issue of fact on summary judgment, and that the bankruptcy court erred in finding "malice" under federal law for § 523(a)(6) purposes given the jury's refusal to do so under California law for punitive damage purposes. He also contends that *Geiger* overruled the line of authorities relied upon by the bankruptcy court.

### a. *The "preponderance of the evidence" standard applies*

■ The United States Supreme Court specifically considered the "preponderance" and "clear and convincing" standards of evidence in *Grogan* and "h[e]ld that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." 498 U.S. at 291, 111 S.Ct. 654. The "preponderance" standard therefore applies in all nondischargeability proceedings without exception. Neither the bankruptcy court nor this Panel may disregard the Supreme Court's directive and elevate the burden of proof in this case to the "clear and convincing" standard.

### b. *The jury finding regarding "malice" was irrelevant and "malice" was established under § 523(a)(6)*

■■ As noted above, "malice" under federal law for purposes of § 523(a)(6) requires proof by a preponderance of the evidence of an act done with the actual intent to cause injury. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *Geiger*, 118 S.Ct. at 977. For purposes of awarding punitive damages under California law, however, "malice" requires proof by *clear and convincing* evidence of conduct which was intended to cause injury to the plaintiff, or despicable conduct which was carried on with a willful and conscious disregard of the rights or safety of others (emphasis added). CAL. CIV. P. CODE § 3294(a), (c)(1).[12]

The court explained this distinction to the parties on several occasions. At the July 10, 1997 summary judgment hearing, for example, the court commented:

Here's what the problem is. Let me describe it to you—what I perceive to be

---

**12.** CAL. CIV. P. CODE § 3294 provides, in pertinent part:

§ 3294. Exemplary damages; when allowable; definitions

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

. . . .

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

the problem. First of all, the jury was asked this question about malice and whether there was malice by clear and convincing evidence. And the jury said no. And everybody—both sides kind of want to make some kind of argument out of that. And my reaction to that is that it just becomes irrelevant. The jury just—I don't know what the jury would have said if they were asked about malice under a preponderance of the evidence.

There's also the question of the jury was asked about malice under California law, not under Federal law. Malice under 523(a)(6) is a question of Federal law, how it's defined under Federal law.

The bankruptcy court memorialized this determination in its Findings of Fact and Conclusions of Law on summary judgment, stating:

5. The finding of the jury with respect to the issue of punitive damages regarding the question of malice by clear and convincing evidence is irrelevant to this proceeding. This finding is made for two reasons:

(a) the definition of malice under California law is different than that under Federal law; and

(b) the jury was required to answer this question by proof of clear and convincing evidence, a standard which is inapplicable in this proceeding. The court does not know what the jury would have found under a preponderance of the evidence standard.

Thus, the bankruptcy court properly differentiated between the definitions and burdens of proof applied in each forum in determining that the jury finding was irrelevant for purposes of § 523(a)(6).

The bankruptcy court then considered the interplay between the elements of CAL. LA-BOR CODE § 3601(a)(1),[13] which applied to this case because the incident occurred during the course and scope of the parties' employment, and the definition of "malice" under federal law. The court concluded:

6. The court concludes that the findings of the jury satisfy the "malice" component of § 523(a)(6). In addition to having to prove the elements of "battery," an intentional tort, because the incident took place in the course and scope of the parties' employment, plaintiff also had to establish all of the elements of Calif. Labor Code § 3601(a), as set forth in Jury Instruction No. 33:

An employee [defendant] may be held liable for injury to another employee [plaintiff] if the injury is proximately caused by the employee's willful, unprovoked, physical act of aggression.

"Willful," as defined by case law in the context of Labor Code § 3601(a), requires a "specific intent to injure." *Soares v. City of Oakland,* 9 Cal.App.4th 1822, 12 Cal.Rptr.2d 405 (1992). Thus, the jury was instructed:

A willful act is an act done with specific intent to injure a person. It is necessary only that defendant have intended to cause harm of any type, whether physical or mental, to plaintiff. The defendant need not have intended to cause the actual injury inflicted on defendant.

Based on this analysis, the bankruptcy court correctly determined that Branam's conduct was "malicious" for purposes of § 523(a)(6) despite the jury's failure to find malice for punitive damage purposes.

Branam asserts, however, that the court erroneously disregarded the effect of *Geiger,* which he contends "involved serious bodily

13. CAL. LABOR CODE § 3601(a)(1) provides:
§ 3601. Exclusive remedy against fellow employee; ...
(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is, except as specifically provided in this section, the exclusive remedy for injury ... of an employee against any other employee of the employer acting within the scope of his or her employment, except that an employee ... shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against the other employee, as if this division did not apply, in either of the following cases:
(1) When the injury ... is proximately caused by the willful and unprovoked physical act of aggression of the other employee.

injury due to debtor's willful and malicious conduct causing head injury." We disagree. First, Branam mischaracterizes the facts of *Geiger:* the conduct in question in that case involved a leg amputation which arose in a medical malpractice context, not a head injury (which arguably could imply an assault and battery context). Second, the record reflects that the bankruptcy court considered the holding of *Geiger* relative to the facts of this case and correctly concluded that it had no effect on its prior determination that the debt was nondischargeable.

## 2. *Denial of Branam's motions for reconsideration and joinder* [14]

■ Motions for reconsideration which merely revisit the same issues already ruled upon by the bankruptcy court, or advance supporting facts that were otherwise available when the issues were originally briefed, will generally not be granted. *Negrete,* 183 B.R. at 197. In this case, the reconsideration motion revisited the same issues regarding summary judgment upon which the court had already ruled following three separate hearings. In addition, while the record reflects that Branam's bankruptcy counsel received the state court files during the first week of May 1997, approximately two weeks before the summary judgment opposition was due, the record also reflects that Branam had amassed the files over a period of more than three years, and that the complaint in the nondischargeability proceeding had been filed in late January 1997, approximately four months before the opposition was due. The motion therefore presented supporting factual information that was clearly available to Branam prior to the first hearing on summary judgment.

The court explained its denial of the motion in detail:

[Y]ou're really talking now about your motion for reconsideration. And the first question, that summary judgment doesn't deal with any of the evidence in the state court and it doesn't deal with any of the facts in the state court. It simply takes the findings made by the jury, the special verdict forum [sic], and says: "Do those findings of fact match the findings of fact that you have to have for 523(a)(6)? Does it match the elements?" And if it does, collateral estoppel applies and the only time you would have to go *behind* a finding of fact is if you could demonstrate that finding of fact could have been made on one of, say, two bases or three bases, one of which is nondischargeable and one of which is dischargeable. Then you would have to go behind the finding of fact.

. . . .

And then you said in your motion that you wanted to attack the judgment in the state court for extrinsic fraud and you cited the *[In re] Lake* case [ [15]] in support of that argument. I think what you want to do it [sic] a considerable extension of the *Lake* case. The *Lake* case is a decision that allowed a state court judgment to be attacked for extrinsic fraud in terms of collateral estoppel. The *Lake* case was a default judgment and the theory behind *Lake,* as the court said, "Equity will set aside a judgment on the basis of extrinsic fraud if the judgment resulted from circumstances of unfairness or injustice where the aggrieved party was not afforded an opportunity to participate in the proceedings or to present his case to the court. The basic requirement for invoking the extrinsic fraud exception is that there has been no fair adversary trial at law." That's far different than when you had a full jury trial in the state court.

*Lake* says, yeah, you can attack a default judgment for extrinsic fraud but I don't think you can attack a jury verdict for extrinsic fraud. I mean, you may be able

---

**14.** Although Branam's notice of appeal states that he appeals the denial of his joinder motion, his appellate briefs do not address the issue other than to complain that the order denying joinder failed to specifically reserve jurisdiction over the issue of set off. *See* Section 3 of this Opinion regarding Branam's abandonment of the set off issue. Fremont Corporation, Allison's workers' compensation insurance carrier, nevertheless filed an appellee's brief out of an abundance of caution. Fremont's brief correctly noted the difficulty of determining what issue, if any, it was expected to address.

**15.** 202 B.R. 751 (9th Cir. BAP 1996).

to appeal it. You maybe ask the state court for a new trial. You may be able to sue somebody, I don't know, but I don't think you can attack that judgment here on that basis, based on *Lake.*

. . . .

With respect to the motion for reconsideration, the argument is really an attack on what went on or failed to go on in the jury trial from an evidentiary point of view. I don't think I have the right to look at that and evaluate that. Whether it's right or wrong, it's right or wrong. You deal with that in the state court and I deal with the judgment that came out of it.

Based on the above, the bankruptcy court did not abuse its discretion in denying the reconsideration motion.

### 3. *Additional issues asserted by Branam on appeal*

Branam argues that the bankruptcy court's judgment should be set aside to the extent that it included attorney fees because such fees are not recoverable under § 523(a)(6).[16] Although the judgment does not expressly include an award of attorney fees, Branam asserts that the portion of the judgment that Crowder will have to pay his attorney for fees under the contingent fee agreement are attorney fees and should be discharged. This argument is without merit. The amount of the judgment against Branam

---

**16.** Based upon a 40% contingent attorney fee that Branam asserts is the customary attorney fee, Branam infers that approximately $300,000 of the judgment will be used to pay attorney fees. Appellant's Opening Brief, p. 22.

**17.** Branam's Statement of Issues includes the following:

6. Did the bankruptcy court err in failing to reserve jurisdiction over the issue of set-off in the order denying Motion for Joinder of Parties Necessary for Just Determination ordered during the proceedings for reasons stated therein?

7. Was the debtor's state court attorney's stipulation in the state court trial, made without debtor's knowledge or authority, that BRANAM injured plaintiff, a de facto consent judgment that should not have been given preclusive effect in this forum?

8. Did the bankruptcy court err in not considering plaintiff's and plaintiff's counsel's misrepresentations, falsehoods and fraud and go-

---

does not include any attorney fees. Rather, Crowder is bearing the economic expense of the fees by using a portion of his compensatory damage award to pay the fees he incurred in the litigation.

Branam's Statement of Issues also lists three issues which are not addressed by argument in his Opening Brief. He simply points the Panel to the pleadings in the record in which the issues were addressed in the proceedings below.[17] The issues are deemed abandoned. *In re Green,* 198 B.R. 564, 566 (9th Cir. BAP 1996); *American Intern. Enterprises, Inc. v. FDIC,* 3 F.3d 1263, 1266 n. 5 (9th Cir.1993). His "discussion" of two of these issues in his Reply Brief consists essentially of "headnote"-type statements of legal principles accompanied by excerpts from various hearing transcripts with virtually no explanation of the context or relevance of the quoted language. This purported discussion is insufficient to preserve the issues on appeal.

## V. CONCLUSION

The state court judgment against the debtor for assault and battery was entitled to collateral estoppel effect in the nondischargeability proceeding, and the bankruptcy court properly barred the debtor from relitigating the issue of the willful and malicious nature of his conduct. The debtor's motion for reconsideration revisited the same issues al-

---

ing behind the state court judgment to review the clearly excessive damages and fashion an equitable remedy?

His "argument" on these issues merely states as follows:

"F. RESERVATION OF JURISDICTION ON SET–OFF

An analysis of the December 11, 1997 transcript shows that not including the reservation of jurisdiction over the issue of set-off was an oversight not error. BRANAM does not wish to abandon but preserve the issue."

"G. CONSENT JUDGMENT ISSUE

Consent judgment issue is addressed in BRANAM's Points and Authorities in support of Motion for Reconsideration. (TAB 30, pages 316 and 317)."

"H. PLAINTIFF'S ATTORNEY'S MISCONDUCT

Plaintiff's attorney's misconduct is addressed in BRANAM's Motion for Reconsideration (TAB 30, page 330) BRANAM does not abandon issue."

ready ruled upon by the bankruptcy court and presented factual evidence that was available when the issues were originally briefed. The order denying reconsideration is AFFIRMED.