**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MAZIYAR JAMES KHABUSHANI,<br>Debtor. | BAP No. CC-20-1242-TFL |
| | Bk. No. 2:19-bk-11796-BR |
| MAZIYAR JAMES KHABUSHANI,<br>Appellant,<br>v.<br>KILEY TASLITZ ANDERSON,<br>Appellee. | Adv. No. 2:19-ap-01096-BR<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Barry Russell, Bankruptcy Judge, Presiding

Before: TAYLOR, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

An arbitrator found that Maziyar James Khabushani wrongfully

terminated Kiley Taslitz Anderson's employment with Mr. Khabushani's

wholly owned corporation, Madison + Vine, Inc. ("M+V"), and awarded

her damages, attorneys' fees, and costs. In so doing, the arbitrator expressly

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

rejected Mr. Khabushani's assertion that the termination was motivated by M+V's financial condition, not unlawful discrimination.

Mr. Khabushani later filed a chapter 7[1] case, and Ms. Anderson filed an adversary proceeding seeking a declaration of nondischargeability of the wrongful termination judgment. She prevailed on a summary judgment motion; the bankruptcy court gave issue preclusive effect to the arbitrator's findings and determined that the state court judgment debt was nondischargeable under § 523(a)(6). This appeal followed.

We acknowledge that in this Circuit there is no *per se* rule that such a judgment constitutes a willful and malicious injury for purposes of § 523(a)(6). But nonetheless, we AFFIRM. The arbitrator's conclusions and the Ninth Circuit authority charging Mr. Khabushani with knowledge of the natural consequences of his wrongful actions provided an appropriate basis for the application of issue preclusion.

## FACTS[2]

Mr. Khabushani was the sole officer, director, and shareholder of M+V, a marketing and advertising company. He employed Ms. Anderson first as a temporary employee, then as an independent contractor, and

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court's dockets. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood),* 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). We also adopt facts as determined in the arbitration.

finally, on November 2, 2017, as an M+V employee with full benefits. Five days later, Ms. Anderson informed Mr. Khabushani that she was pregnant and requested a maternity leave commencing in May of 2018.

Twenty-five days later, Mr. Khabushani terminated her.

In February of 2018, Ms. Anderson commenced arbitration against Mr. Khabushani and M+V, asserting claims arising from her termination, including sex discrimination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940 *et seq.*, wrongful termination in violation of public policy, alter ego claims, and California Labor Code violations.

A retired judge acted as arbitrator in the proceeding. During the three-day arbitration hearing, the parties each presented testimonial and documentary evidence under oath and cross-examined witnesses.

The Arbitrator then issued his final award and an amended final award correcting a single typographical error ("Award"). He found that Mr. Khabushani and M+V were jointly and severally liable for wrongful termination of Ms. Anderson because of her sex and pregnancy but were not liable for Labor Code violations. Among other things, the Arbitrator determined that:

> [t]he evidence regarding the wrongful termination was very compelling. A simple review of the time line, shows that [Anderson] was a valued employee until she told [Khabushani] that she was pregnant and within less than four weeks she was terminated. This combined with the statements made by

[Khabushani] to other employees[3] and other actions taken by him just two days before terminating [Anderson],[4] proves beyond doubt that her termination was because of her pregnancy.

The evidence offered by [Khabushani] regarding the company's poor financial condition was not convincing; at least at the time of [Anderson's] termination, the company's finances were not a consideration. The company's condition at some later date obviously convinced [Khabushani] that the company needed to go in a different direction, but this had nothing to do with the termination of [Anderson].[5]

The Arbitrator awarded Ms. Anderson $43,759.00 in special damages, $125,000 in emotional distress damages, $319,667.50 in attorneys' fees, and $48,787.68 in costs, for a total award of $537,214.18. But he declined to award punitive damages after determining that "[t]he evidence presented

---

[3] The Arbitrator found that before the termination, Mr. Khabushani told other M+V employees that he was disappointed that Ms. Anderson would be taking maternity leave and informed them that he might terminate her employment because she was not doing a great job and she let her children interfere with her career.

[4] The Arbitrator found that during a November 28, 2017, meeting between Mr. Khabushani and Ms. Anderson, he questioned her ability to hit her sales targets given that she was having a baby and would be "leaving," reduced her performance bonuses because he "changed his mind," and attempted to raise her sales targets to "make up" for the time that she would be "losing" during maternity leave.

[5] The Arbitrator determined that: Mr. Khabushani told M+V employees that he terminated Ms. Anderson due to undisclosed performance issues and that M+V was financially stable; within a week of Ms. Anderson's termination, Mr. Khabushani booked an expensive vacation using M+V funds and began looking for her replacement; and in January of 2018, Mr. Khabushani hired two new employees, including a new President. The Arbitrator made these determinations while also acknowledging that, within a few months of terminating Ms. Anderson, Mr. Khabushani terminated nearly all of M+V's employees.

[did] not substantiate [Ms. Anderson's] request for Punitive Damages."

Less than two weeks after entry of the Award, Mr. Khabushani filed a chapter 7 bankruptcy. Ms. Anderson timely filed a § 523(a)(6) complaint,[6] seeking to except from Mr. Khabushani's discharge the debt owed her for the wrongful termination. She subsequently obtained relief from the automatic stay and converted the Award to a final judgment in state court.[7]

After the appeal period expired, Ms. Anderson filed a motion for summary judgment on her § 523(a)(6) claim based on the preclusive effect of the Arbitrator's findings and the final state court judgment.

Mr. Khabushani opposed the summary judgment motion and contended, among other things, that summary judgment would be improper because the issues underpinning a willful and malicious injury determination were not at issue, actually litigated, or necessarily decided in the arbitration.

After holding a hearing on the motion, the bankruptcy court entered an order granting Ms. Anderson summary judgment. The order was accompanied by findings of fact and conclusions of law in which the bankruptcy court determined that issue preclusion barred Mr. Khabushani from relitigating whether he inflicted a willful and malicious injury on

---

[6] The complaint also included a § 727 claim, which will not be discussed herein as it was voluntarily dismissed.

[7] The state court entered judgment confirming the $537,214.18 Award and granting Ms. Anderson $32,821.59 in prejudgment interest and $8,445 in additional attorneys' fees and costs for a total judgment of $578,480.77.

5

Ms. Anderson by terminating her employment with M+V.

Mr. Khabushani timely appealed from the summary judgment.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment on Ms. Anderson's § 523(a)(6) claim based on issue preclusion?

## STANDARDS OF REVIEW

We review a bankruptcy court's grant of summary judgment and § 523(a)(6) nondischargeability determination de novo. *See Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013).

We likewise review a bankruptcy court's determination that issue preclusion is available de novo. *Id.* If issue preclusion is available, we review its application for an abuse of discretion. *Id.* A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or its factual findings are illogical, implausible, or without support by inferences from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any basis supported by the record. *In re Black*, 487 B.R. at 211.

## DISCUSSION

## A. Summary judgment and issue preclusion standards

Summary judgment is appropriate if the pleadings and supplemental materials demonstrate that there is no genuine issue as to any material fact on the claims at issue and the moving party is entitled to judgment as a matter of law. *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). While the evidence must be viewed in the light most favorable to the nonmoving party, only factual disputes that might affect the outcome of the lawsuit can defeat a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lopez v. Smith*, 203 F. 3d 1122, 1131 (9th Cir. 2000) (en banc).

The bankruptcy court may grant summary judgment in a nondischargeability proceeding based on the issue preclusive effect of an arbitration award confirmed by a California state court. *See Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 826, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). To do so, the bankruptcy court must apply California's law on issue preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

California law provides that issue preclusion, also known as collateral estoppel, prevents a party from relitigating a previously decided issue in a second suit where: (1) the issue is identical to what was decided in the first suit; (2) the issue was actually litigated in the first suit; (3) the issue was necessarily decided in the first suit; (4) the decision in the first

7

suit is final and on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, a party to the first suit. *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990). Even where these five requirements are met, a court may not apply issue preclusion unless its application is consistent with sound public policy. *Id*. at 343.

The party advocating for issue preclusion must prove all the criteria for its application by presenting a record sufficient to reveal the controlling facts and issues litigated in the first suit. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt regarding what was decided in the first suit will weigh against application of issue preclusion. *Id*.

## B. Issue preclusion is available.

On appeal, we need not, and do not, address the bankruptcy court's unchallenged determination that the fourth (final judgment on the merits) and fifth (same parties) issue preclusion criteria are met. And we conclude that Ms. Anderson produced evidence showing that there is no genuine issue as to any material fact that the other criteria are met.

### 1. Willful injury

A creditor seeking to hold a debt nondischargeable under § 523(a)(6) has the burden of proving by the preponderance of the evidence that the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6); *Grogan v. Garner*, 498 U.S. 279, 289 (1991). The requirements of "willful" and "malicious" are

8

considered separately. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 (9th Cir. 2002).

### a. Intentional tort

A "willful" injury is "a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). "[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id*. at 61-62 (emphasis in original) (citation omitted). Thus, tortious conduct is a required element for a § 523(a)(6) nondischargeability finding. *Lockerby v. Sierra*, 535 F.3d 1038, 1040-41 (9th Cir. 2008). A tort-like statutory injury suffices. *See Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205-06 (9th Cir. 2001).

This requirement is easily met here; because pregnancy discrimination violates the California Constitution's ban on sex discrimination,[8] an employer who fires an employee based on her pregnancy may be subject to tort liability for wrongful discharge in violation of public policy. *See id*. at 1206 (holding that the court must look to state law to determine whether conduct is tortious and determining that debtor's nonpayment of wages was tortious because it violated California

---

[8] California Constitution, article I, section 8, provides that "[a] person may not be disqualified from . . . pursuing . . . employment because of sex . . . ."

9

Labor Code § 216); *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 214, (2011) ("Sex discrimination in employment may support a claim of tortious discharge in violation of public policy." (citation omitted)); *Badih v. Myers*, 36 Cal. App. 4th 1289, 1296 (1995) ("[W]e conclude that pregnancy discrimination is a form of sex discrimination under article I, section 8 of the California Constitution. Since article I, section 8 expresses a fundamental public policy against sex discrimination in employment, [Plaintiff] was properly allowed to maintain her cause of action for wrongful discharge in contravention of public policy." (internal citation omitted)). So, Ms. Anderson holds a claim that may form the basis for § 523(a)(6) nondischargeability.

### b. Intentional discrimination

A determination of willful injury also requires that the debtor either had the subjective motive to inflict injury or committed a "deliberate act with knowledge that the act is substantially certain to cause injury. . . ." *In re Jercich*, 238 F.3d at 1208 (citation omitted). Mr. Khabushani, thus, contends § 523(a)(6) liability is not established for issue preclusive purposes because the Arbitrator neither was required to find, nor actually found, that he had the subjective intent to injure Ms. Anderson or believed her injury was substantially certain to occur as a result of his conduct. We disagree with his conclusion.

We begin with the elements of Ms. Anderson's discrimination claim under the FEHA. The FEHA prohibits an employer from discriminating

10

against any person in terms, conditions, or privileges of employment because of the person's sex, which includes pregnancy or medical conditions related to pregnancy. Cal. Gov. Code §§ 12926(r)(1), 12940(a). As relevant here, disparate treatment discrimination under the FEHA is intentional discrimination against a person on prohibited grounds. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 361 (2000). To establish an employer's liability for such discrimination, a plaintiff must demonstrate that her protected characteristic was a substantial motivating factor in the challenged employment decision. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 231-32 (2013); Cal. Code Regs., tit. 2, § 11009(c). Judicial Council of California Advisory Committee on Civil Jury Instructions 2507 provides that "[a] 'substantial motivating reason' is a reason that actually contributed to the [. . . *adverse employment action*]. It must be more than a remote or trivial reason. It does not have to be the only reason motivating the [*adverse employment action*]." (Emphasis in original).[9]

In analyzing claims of disparate treatment discrimination under the FEHA, California courts employ a three-stage burden-shifting approach established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Husman v. Toyota Motor Credit Corp.*, 12 Cal. App. 5th 1168, 1181 (2017). The *McDonnell Douglas* three-step approach is

---

[9] "The Judicial Council endorses [model jury] instructions for use and makes every effort to ensure that they accurately state existing law. The articulation and interpretation of California law, however, remains within the purview of the Legislature and the courts of review." Cal. R. of Court 2.1050(b).

as follows: (1) the plaintiff must establish a prima facie case by a preponderance of evidence that: (a) she had a protected characteristic; (b) she was qualified for her position or performed competently in it; (c) she suffered an adverse employment action; and (d) her protected characteristic motivated the action; (2) the employer may rebut a presumption of discrimination established by the plaintiff's prima facie case by proffering a nondiscriminatory reason for the action; and (3) the plaintiff then will bear the burden to show by a preponderance of the evidence that the employer's proffered reasons are pretexts for discrimination. *Id.*; *Heard v. Lockheed Missiles & Space Co.*, 44 Cal. App. 4th 1735, 1749 (1996).

The *McDonnell Douglas* framework:

> presupposes that the employer has a single reason for taking an adverse action against the employee and that the reason is either discriminatory or legitimate. By hinging liability on whether the employer's proffered reason for taking the action is genuine or pretextual, the *McDonnell Douglas* inquiry aims to ferret out the "true" reason for the employer's action.

*Harris*, 56 Cal. 4th at 215.

With respect to the employer's reason for termination, if it is nondiscriminatory:

> "[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." (*King v. United Parcel Service, Inc.* (2007) 152 Cal. App. 4th 426, 436, 60

12

Cal. Rptr. 3d 359 (*King*).) As the Supreme Court explained in *Guz*, "if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*. Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of discrimination. [Citations.]" (*Guz*, *supra*, 24 Cal. 4th at p. 358, 100 Cal. Rptr. 2d 352, 8 P.3d 1089, original italics.).

*Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 170-71 (2011), *as modified on denial of reh'g* (May 12, 2011).

Thus, and contrary to Mr. Khabushani's urging, the objective truth or falsity of Mr. Khabushani's alleged nondiscriminatory reason for terminating her—*i.e.,* an alleged rapid deterioration of the financial condition of his business and his need to cut costs by eliminating employees, including Ms. Anderson—was not at issue. Rather, the Arbitrator was charged with assessing whether Mr. Khabushani honestly believed he must terminate Ms. Anderson to eliminate costs and whether that belief motivated his decision to terminate her. And faced with Ms. Anderson's and Mr. Khabushani's competing proffered explanations for Ms. Anderson's termination, the Arbitrator ruled that Mr. Khabushani wrongfully terminated Ms. Anderson based on her sex and the fact that she was pregnant and not on the subjective nondiscriminatory reason claimed by Mr. Khabushani.

### c. Natural consequences of intentional discrimination

While the Arbitrator did not need to go a step further and find that Mr. Khabushani had the subjective intent to injure Ms. Anderson or that he believed that her injury was substantially certain to occur as a result of his conduct, Mr. Khabushani is charged with knowledge of the natural consequences of his intentional discrimination. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). He must have known that it was substantially certain that Ms. Anderson would suffer injury as a result of the wrongful termination. After all, emotional and financial damages are normal, natural, and direct consequences of a wrongful termination decision.[10]

Willfulness is established by the Arbitration Judgment. The Arbitrator necessarily decided an actually litigated issue as to Mr. Khabushani's intentional commitment of a wrongful act, pregnancy discrimination. And as to intent to injure, Mr. Khabushani is charged with knowledge of the natural consequences of his wrongful act. And while he

---

[10] Indeed, some courts take a more *per se* approach and hold that a discriminatory employment action taken in violation of laws comparable to the FEHA meets the requisite intentional injury requirement of § 523(a)(6). *See, e.g., Jones v. Svreck (In re Jones)*, 300 B.R. 133, 141 (1st Cir. BAP 2003) ("This Panel concludes that a finding of sexual harassment constitutes the requisite injury and is equivalent to a finding of malicious and willful injury for dischargeability purposes under § 523(a)(6)."); *Fuller v. Rea (In re Rea)*, 606 B.R. 531, 537-39 (Bankr. S.D.N.Y. 2019) ("This Court now holds that discriminatory termination is the injury Plaintiff suffered and that a judgment finding a Defendant intentionally caused that injury, particularly when an unlawful discriminatory animus is apparent, is enough to meet the prong of willfulness under § 523(a)(6) of the Bankruptcy Code.").

argues vehemently that the Arbitrator was incorrect in his determination of wrongful intent, he has never argued that he did not know that termination would harm Ms. Anderson. To the contrary, before the bankruptcy court, he emphasized how upset he was at taking this action.[11] The record and a common sense determination regarding knowledge of the natural consequences of his actions support the bankruptcy court's conclusion that Mr. Khabushani acted with certainty of the harmful impact of an act that the Arbitrator found to be wrongful.

### d. Lack of punitive damages

Nevertheless, Mr. Khabushani contends that the Arbitrator's decision to not award punitive damages creates a triable issue of fact regarding his intent to injure. Put another way, he asserts that this creates sufficient uncertainty that retrial is required. We disagree.

As explained above, the parties actually litigated and the Arbitrator necessarily decided that Mr. Khabushani intentionally discriminated against Ms. Anderson when he terminated her employment. And as Mr. Khabushani is charged with knowledge of the natural consequences of this wrongful termination, he necessarily willfully injured Ms. Anderson by wrongfully terminating her employment. The Arbitrator's decision not to award punitive damages does not undercut this conclusion.

While punitive damages findings under Cal. Civ. Code § 3294 that

---

[11] In his declaration, he stated that "When I had to lay off the Plaintiff, I was sick to my stomach having to break the news to her . . . "

"are clearly and solely based on a finding of Intentional Malice, fraud, or both . . . are sufficient to meet the willfulness requirement of § 523(a)(6)[,]" *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 470 (9th Cir. BAP 2015),[12] the Arbitrator was not compelled to award punitive damages even if he found "Intentional Malice, fraud, or both" because an award of punitive damages is always a discretionary matter. *Brewer v. Second Baptist Church of L.A.*, 32 Cal. 2d 791, 801 (1948) ("Upon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded. A plaintiff is entitled to such damages only after the jury, in the exercise of its untrammeled discretion, has made the award." (citation omitted)). Ms. Anderson had no "right" to punitive damages as she was presumptively made whole by the compensatory damages award. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." (citation omitted));

---

[12] In *Plyam*, we defined "Intentional Malice" as "conduct that the defendant intends to cause injury to the plaintiff" and "Despicable Malice" as "despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others . . . " 530 B.R. at 465. We additionally held that "a punitive damages award based on Despicable Malice or oppression does not establish the subjective intent required for § 523(a)(6) willfulness." *Id*. at 470.

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP*, 30 Cal. 4th 1037, 1051 (2003).

Also, in assessing whether to award punitive damages, the Arbitrator was confined to awarding damages that were proportionate to the defendants' ability to pay. *Adams v. Murakami*, 54 Cal. 3d 105, 112 (1991). After all, "the purpose of punitive damages is not served by financially destroying a defendant. The purpose is to deter, not to destroy." *Id*. It appears probable from the Arbitrator's findings that Ms. Anderson failed to establish that the defendants' financial condition permitted an award of punitive damages. *Id.* at 119 ("In light of our holding that evidence of a defendant's financial condition is essential to support an award of punitive damages, Evidence Code section 500 mandates that the plaintiff bear the burden of proof on the issue. A plaintiff seeking punitive damages is not seeking a mere declaration by the jury that he is entitled to punitive damages in the abstract. The plaintiff is seeking an award of real money in a specific amount to be set by the jury. Because the award, whatever its amount, cannot be sustained absent evidence of the defendant's financial condition, such evidence is 'essential to the claim for relief.' (Evid. Code, § 500.)").

Specifically, the Arbitrator found that within a few months of terminating Ms. Anderson, Mr. Khabushani terminated all of M+V's employees, "except himself and maybe one other employee. There was no new income because [he] had let go all of the sales personnel." Thus, the

17

defendants' ability to pay punitive damages was dubious at best.

The Arbitrator, however, did not explain why he declined to award punitive damages. But this gap does not require retrial on the intent to injure element, because even if the Arbitrator denied punitive damages on the alternative basis that Ms. Anderson failed to prove Intentional Malice or fraud, his ruling would be immaterial to the issue of whether the Arbitrator's intentional discrimination findings should preclude Mr. Khabushani from litigating the "willful injury" requirement of § 523(a)(6). Intentional Malice and fraud for the purpose of awarding punitive damages involve a higher standard of proof than is required for a "willful injury" finding under § 523(a)(6) or for a determination of sex-based discrimination. For an award of punitive damages, clear and convincing evidence must be presented. Cal. Civ. Code § 3294(a). But for determinations of nondischargeability and intentional discrimination, the elements need only be proven by a preponderance of the evidence. *Grogan*, 498 U.S. at 279; *Heard*, 44 Cal. App. 4th at 1749.

We discussed the consequences of the different burdens of proof in *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 47 (9th Cir. BAP 1998), *aff'd*, 205 F.3d 1350 (9th Cir. 1999). In *Branam*, the bankruptcy court granted a creditor summary judgment on its § 523(a)(6) claim solely based on the preclusive effect of a California state court judgment for assault and battery under Cal. Labor Code § 3601(a). We affirmed, notwithstanding that the state court jury failed to find "malice" for the purpose of awarding

18

punitive damages. We reasoned that the failure to find malice was irrelevant to the issue of nondischargeability under § 523(a)(6) in part because malice under Cal. Civ. Code § 3294(a) involves a different (higher) standard of proof. *Id.* at 53; *accord Hernandez v. Powers & Effler Ins. Brokers (In re Hernandez)*, BAP No. EC-10-1025-JuMkZi, 2011 WL 3300927, at *6 (9th Cir. BAP Jan. 5, 2011) (relying on *Branam*). Thus, it is irrelevant whether the Arbitrator failed to find Intentional Malice or fraud.[13]

For all these reasons, we determine that the bankruptcy court properly found that the Arbitrator's findings were entitled to preclusive effect on the issue of willful injury.

## 2. Malicious injury

The bankruptcy court likewise properly found that the Arbitrator's findings were entitled to preclusive effect on the issue of malicious injury. An injury is malicious if it is "a wrongful act, done intentionally, which necessarily causes injury, and which is done without just cause or excuse." *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 427 (9th Cir. BAP 2002) (citing *In re Jercich*, 238 F.3d at 1208). We agree with the bankruptcy court that the Arbitrator's determination that Mr. Khabushani unlawfully terminated Ms. Anderson based on her sex and the fact that she was pregnant establishes three of the four maliciousness elements: a legally wrongful act, done intentionally, which necessarily caused injury.

---

[13] But, we acknowledge, liability under Cal. Labor Code § 3601(a) requires a specific intent to injure. *In re Branam*, 226 B.R. at 53.

As for the fourth and final maliciousness element—the absence of just cause or excuse—the record did not contain any argument of just cause or excuse, except for Mr. Khabushani's contention that he subjectively believed that the termination was justified by the financial deterioration of his business and his need to cut costs. But this contention is barred by the preclusive effect of the Arbitrator's findings regarding the true motivation behind Ms. Anderson's termination. The Arbitrator expressly rejected this stated reason for terminating Ms. Anderson. Mr. Khabushani also necessarily failed to prove that he would have made the same decision to terminate Ms. Anderson for lawful reasons even if he had not taken Ms. Anderson's sex and pregnant status into account because Ms. Anderson would not have been entitled to an award of damages had he done so. *See Harris*, 56 Cal. 4th at 241 ("If the employer proves by a preponderance of the evidence that it would have made the same decision for lawful reasons, then the plaintiff cannot be awarded damages, backpay, or an order of reinstatement.").

Accordingly, we perceive no error in the bankruptcy court's holding that the Arbitrator's factual determinations established, for issue preclusion purposes, § 523(a)(6) maliciousness.

## C. Any failure to conduct a public policy analysis constituted harmless error.

After determining that the five threshold criteria for issue preclusion were met, the bankruptcy court was required to consider whether

imposing issue preclusion would be fair and consistent with sound public policy. *In re Khaligh*, 338 B.R. at 824-25. We agree with Mr. Khabushani that the record does not clearly reflect that the bankruptcy court conducted a public policy inquiry. There was no discussion of this element at the hearing but in finding number twelve there is a discussion of those elements typically considered in such an analysis—conservation of judicial resources and avoidance of multiple, and potentially inconsistent, results. The bankruptcy court found these interests served by an application of issue preclusion here.

And we disagree that if there was an oversight, it constitutes reversible error because we can conduct the analysis in the first instance given that the record allows a complete understanding of these issues. *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 583 (9th Cir. BAP 2020) *aff'd*, 2021 WL 1923744 (9th Cir. 2021) *(citing Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975)).

In *Vandenberg v. Superior Court*, the California Supreme Court held that in deciding whether there is "fairness and sound public policy," "courts consider the judicial nature of the prior forum, i.e., its legal formality, the scope of its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings." 21 Cal. 4th 815, 829 (1999). Thus, when applying issue preclusion based on a confirmed arbitration award, a court must examine "whether the underlying arbitration followed basic elements of adjudicatory

21

procedure and was, thus, 'adjudicatory in nature.'" *In re Khaligh*, 338 B.R. at 828 (quoting *Kelly v. Vons Cos.*, 67 Cal. App. 4th 1329, 1336 (1998)); *see also Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177–79 (9th Cir. 2002). The arbitration proceedings must be adjudicatory in nature even if the award was confirmed by the state court. *In re Khaligh*, 338 B.R. at 829. In other words, the arbitration should afford the parties "the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision." *Kelly*, 67 Cal. App. 4th at 1336.

Nothing in the record causes us to question the adjudicatory nature of the arbitration here. The parties agreed to settle any dispute regarding the termination of Ms. Anderson's employment by final and binding arbitration. During the arbitration proceedings, they were represented by counsel who filed written arguments, submitted exhibits, and presented three days of testimony by multiple witnesses. The Arbitrator was a retired judge who presided over numerous discovery disputes and status conferences in the arbitration. And after considering the evidence, the Arbitrator produced his five-page Award setting forth the bases for his decision to award $537,214.18 to Ms. Anderson. Mr. Khabushani fails to raise any public policy concern; reversal on this point is not appropriate.

## CONCLUSION

Based on the foregoing, we AFFIRM.

22